504 So.2d 953 (1987)
STATE of Louisiana
v.
Ronnie WAYMIRE.
No. KA 86 0864.
Court of Appeal of Louisiana, First Circuit.
March 4, 1987.
*954 William R. Campbell, Jr., New Orleans, for State.
Anthony R. Crouse, Office of Indigent Defender, Covington, for appellant.
*955 Before GROVER L. COVINGTON, C.J., and LANIER and ALFORD, JJ.
LANIER, Judge.
Ronnie Waymire was charged by bill of information with attempted aggravated rape, in violation of La.R.S. 14:27 and 14:42. He was tried by a jury, which convicted him as charged, and was subsequently sentenced to serve thirty-five years at hard labor. He appealed, setting forth fifteen assignments of error and briefing eight.[1] Assignments of error not briefed are considered abandoned. Uniform RulesCourts of Appeal, Rule 2-12.4.

FACTS
Defendant was charged with the attempted aggravated rape of a video rental store clerk in Slidell, Louisiana. The incident occurred on Saturday, September 12, 1985, at approximately 12:30 p.m., when the store was open for business. The victim testified she first noticed defendant staring at her through the plate glass windows of the storefront. As he passed by several times, she particularly noticed he was wearing a light colored T-shirt with dark sleeves and a dark neck. She was not able to see his other clothing.
A few minutes later, she heard the front door open while she was in the back of the store. Thinking it was her coworker, she did not immediately return to the display area. Shortly thereafter, she walked out to see a man wearing a hood-type mask running down the aisle towards her. The masked man was carrying a long gold knife with the blade open. He was wearing a light T-shirt with dark sleeves and neck and old blue jeans. He did not wear shoes, and his feet were very dirty.
Although she offered him the store's receipts, defendant responded that he did not want the money and forced her to loosen and pull down her pants. He then ordered her to bend over a desk and unsuccessfully attempted to penetrate her. Defendant then told her to lie down on the floor; when she did not respond quickly, he shoved her to the floor and climbed on top of her. She then persuaded him that she would comply if he would help her remove her pants. When he put the knife down to assist her in removing her shoes, she ran screaming from the store. She fled to a greeting card shop next door, and the police were called. Questioning revealed that defendant had also browsed in that store, frightening the female clerk because of his appearance and because he kept staring at her. She testified that, approximately twenty minutes after he left, the victim came into her store screaming hysterically.
Defendant was apprehended the day after the incident as police officers returned to the card shop with a photographic array for the attendants to view. The officers noticed he fit the physical description of the suspect and was wearing clothing similar to that described by the victim. He voluntarily accompanied the officers to the Slidell police station where he gave a statement, admitting he had attempted intercourse with the victim but claiming she voluntarily acquiesced.

DENIAL OF MISTRIAL

(Assignment of Error No. 3)
Defendant submits the trial court erred in failing to grant his motion for a mistrial after Detective Earl Price testified on cross-examination that, "[defendant] was advised of his Miranda Rights at the time I completed the NCIC check. And it was found that he was wanted in St. Charles Parish." Defendant submits this statement indirectly refers to another crime committed or alleged to have been committed by the defendant. This would be other crimes evidence, which is not admissible; therefore, this testimony constituted prejudicial conduct before the jury for which defendant is entitled to a mistrial. La.C. Cr.P. art. 775.
*956 La.C.Cr.P. art. 775 provides that, upon motion of a defendant, a mistrial shall be ordered; and in a jury case, the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771. La.C. Cr.P. art. 770 provides mandatory grounds for mistrial, including a reference by the judge, district attorney or a court official to another crime committed or alleged to have been committed by the defendant. La.C. Cr.P. art. 771 provides discretionary grounds for mistrial, which include a reference to another crime made by a person other than those listed in Article 770. Rather than arguing the court abused its discretion by denying his motion for a mistrial under Article 771, defendant attempts to establish this conduct mandated a mistrial as prejudicial conduct under Article 775.
Mistrial is a drastic remedy and, except in instances in which it is mandatory, a mistrial is warranted only when a trial error results in substantial prejudice to defendant, depriving him of a reasonable expectation of a fair trial. Although a potentially prejudicial remark by an experienced officer should be viewed with concern as to the fairness of the trial, the decision as to the necessity of granting a mistrial is within the wide discretion of the trial court. State v. Collins, 470 So.2d 553 (La.App. 1st Cir.1985); State v. Gibson, 459 So.2d 1294 (La.App. 1st Cir.1984).
On direct examination, Detective Earl Price made a reference to the fact that the Slidell Police Department had made a routine NCIC check upon defendant. Defense counsel immediately objected, and the court sustained the objection. The jury was not informed of the results of the check. After the second unsolicited reference by Detective Price, defense counsel again objected to the remark; the court sustained the objection and ordered the jury be removed from the courtroom. The court reprimanded Detective Price, warning him that he would be held in contempt of court if he referred again to the NCIC check. During the course of this reprimand, defendant moved for a mistrial. The court denied the motion, finding that Price had been stopped before his references mandated a mistrial.
Upon review of the record as a whole, we are not convinced that the remarks of Detective Price deprived defendant of a fair trial. Although his testimony was inadvisable, we agree with the trial court that the testimony was stopped before defendant could be prejudiced thereby. Price's remarks did not unambiguously refer to another crime committed by the defendant. State v. Hayes, 414 So.2d 717 (La.1982).
This assignment of error is without merit.

REFUSAL TO COMPEL PRESENCE OF WITNESS

(Assignment of Error No. 4)
Defendant argues the trial court erred in refusing to require the presence of Dr. Albert DeVillier, a psychiatrist appointed to examine defendant to ascertain whether or not he was competent to stand trial. Defendant subpoenaed Dr. DeVillier for the trial, but he did not appear. Initially, we note that the record does not reflect what motion, if any, defendant made to secure the testimony of Dr. DeVillier; nor do we know if Dr. DeVillier was present or absent; if absent, whether his absence was deliberate or inadvertent; or possibly, if he was merely delayed and defendant sought to recess the trial until he could appear. In brief, defendant argues the court deprived him of his right to compulsory process. We presume, therefore, that defendant moved for an instanter subpoena for Dr. DeVillier, which the court denied.
In argument before the court, defense counsel argued he intended to present Dr. DeVillier's testimony on his capacity to handle stressful situations in connection with his overall mental capacity, in order to attack defendant's specific intent and defendant's confession.
The court noted defendant had previously been found competent and, therefore, evidence of his diminished mental *957 capacity was not relevant. Under La.C. Cr.P. art. 651, evidence of a mental condition or defect at the time of the offense is not admissible when the defendant fails to plead "not guilty and not guilty by reason of insanity." Moreover, a mental defect or disorder short of insanity will not serve to negate specific intent and reduce the degree of a crime. State v. Lecompte, 371 So.2d 239 (La.1978); State v. Burton, 464 So.2d 421 (La.App. 1st Cir.1985), writ denied, 468 So.2d 570 (La.1985). Since defendant did not plead an insanity defense, the testimony of Dr. DeVillier regarding defendant's ability to formulate specific intent was properly denied. State v. Leatherwood, 411 So.2d 29 (La.1982). Additionally, specific intent is an ultimate legal conclusion to be resolved by the fact finders. Because an expert witness must state the facts upon which his opinion is based, we can reasonably deduce that the testimony of an expert in psychiatry and psychoanalysis concerning the defendant's lack of specific intent would necessarily include testimony of a mental defect or condition. See La.R.S. 15:465. Stated another way, in order for the physician to testify as to the effect, no specific intent, he would testify as to the cause, mental condition. This is true even when he asserts that the testimony would prove the absence of specific intent as a defense as distinguished from the inability to form specific intent. Therefore, Louisiana Code of Criminal Procedure Article 651 precludes admission of an expert's testimony concerning the absence of specific intent when the defendant's plea is not guilty.
Defendant also sought to use the testimony of Dr. DeVillier to establish that he lacked the mental capacity to waive his right to remain silent and, therefore, that his confession was involuntary. He argues that this testimony was relevant because Dr. DeVillier testified at the lunacy hearing that defendant might have been psychotic when he was first examined in the parish jail.
Defendant filed a motion to suppress the confession, alleging only that it was unlawfully obtained. The court conducted a hearing on defendant's motion immediately following its ruling that defendant was competent to stand trial. Although Dr. DeVillier testified at the lunacy hearing, defendant did not seek his testimony with regard to the motion to suppress. The state presented the testimony of Sgt. Sigmund Swenson of the Slidell Police Department, establishing through him that defendant had been advised of and understood his constitutional rights and that the confession was freely and voluntarily made. Defendant did not suggest at that hearing that his mental capacity was at issue.
During trial, the state again presented the testimony of Sgt. Swenson to establish the admissibility of the statement. Defendant did not raise the issue of his mental capacity. After the court found the statement admissible, defendant objected but did not state a basis for his objection. Defendant's taped statement was then played to the jury. Only after the state had rested did defendant raise the issue of mental capacity, arguing that Dr. DeVillier's testimony was necessary to establish defendant's mental capacity to waive his constitutional rights.
Generally, the failure by an accused to file a motion to suppress evidence, in accordance with La.C.Cr.P. art. 703, prevents him from objecting to its admissibility at the trial on the merits on a ground assertable by a motion to suppress. Defendant's proper remedy was to raise the issue of his mental capacity by a motion to suppress. Thereafter, even had he been unsuccessful in his motion, he could have presented evidence at trial of the circumstances surrounding the making of his confession to enable the jury to determine the weight to ascribe it. Nevertheless, at this time we elect to consider the relevance of Dr. DeVillier's testimony to the admissibility of defendant's statement.
Before the state can introduce what purports to be a confession, it must affirmatively show it was made freely and voluntarily and was not made under the influence of fear, duress, menaces, threats, inducements or intimidation. La.R.S. *958 15:451. The state may rely on the presumption of sanity provided in La.R.S. 15:432, leaving to defendant the burden to prove the existence of a mental abnormality which, under the circumstances, may have destroyed the voluntary nature of his confession. State v. Glover, 343 So.2d 118 (La.1976). A claim of mental illness or introduction of evidence thereof does not shift the ultimate burden of voluntariness from the state. If the defendant fails to prove the existence of a mental defect or fails to prove that such a disorder prevented his confession from being voluntary, the state is not required to negate the defendant's mental abnormality, but the state must in all other respects prove beyond a reasonable doubt that the confession was voluntary. State v. Roux, 487 So.2d 1226 (La.App. 3rd Cir.1986), writ denied, 489 So.2d 244 (La.1986). Once the trial court has determined that the state has met its burden of proof, his decision is entitled to great weight on review.
Although defendant asserts the testimony of Dr. DeVillier was crucial to his argument that he was not capable of voluntarily and intelligently waiving his rights, at the lunacy hearing the doctor specifically testified that he had not formed an opinion of defendant's sanity at the time of the commission of the offense, nor had he examined defendant in an attempt to do so. Thus, although defendant's argument is based on a statement by Dr. DeVillier that defendant might have been psychotic when first examined by him, in light of the positive testimony that the doctor had not made a determination of defendant's capacity at the time of the offense, defendant failed to establish the necessity of DeVillier's testimony. Moreover, we note that the reference to defendant's possible psychosis was derived from Dr. DeVillier's first examination of him; while the record does not reflect the date of that initial visit, it does establish that Dr. DeVillier was appointed to the lunacy commission three months after defendant's arrest and confession. Dr. DeVillier's initial impression of defendant has little, if any, bearing on defendant's mental condition at the time of his confession.
We conclude, therefore, that defendant did not establish the relevance of the doctor's testimony. We find no error in the trial court's refusal to issue an instanter subpoena.
This assignment of error is without merit.

SUFFICIENCY OF THE EVIDENCE

(Assignment of Error No. 6)
Defendant submits that the evidence was not sufficient to support the verdict. He argues that, although the trier of fact might have found evidence of attempted sexual battery, the state presented no evidence of attempted oral or vaginal intercourse.
A plea of not guilty places upon the state the burden of proving beyond a reasonable doubt each element of the crime charged. La.R.S. 15:271; State v. Guirlando, 491 So.2d 38 (La.App. 1st Cir.1986). In State v. Mathews, 375 So.2d 1165 (La.1979), a majority of the Louisiana Supreme Court determined that the United States Supreme Court case of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), required that the standard of review when considering the sufficiency of the evidence to support a criminal conviction is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This standard for the appellate review of facts in criminal cases has been made statutory. La.C.Cr.P. art. 821; State v. Captville, 448 So.2d 676 (La. 1984); State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983). The Jackson standard of Article 821 is an objective standard for testing the overall evidence, direct and circumstantial, for reasonable doubt.
The victim testified defendant refused to take the store's money when she offered it, ordering her instead to remove her pants and bend over a desk. She felt him touch her with what she thought was his finger as he also held the knife against her back. He then shoved her to the floor *959 and unfastened his pants before he climbed on top of her. Apparently, without defendant's knowledge, the victim had succeeded in inching her underwear back up to her hips. She testified that, although she was trying not to look, she presumed he had pulled his undershorts down, "because I couldI could feel him on me." Her testimony clearly evinces defendant's attempt to commit aggravated rape upon her, thwarted by her actions of pulling up her underwear and successfully planning her escape. The testimony of the victim is sufficient to establish the elements of the offense. State v. Robinson, 491 So.2d 451 (La.App. 1st Cir.1986).
Defendant's argument that the state did not prove he actually intended to penetrate the victim's anus or vagina has no merit. Any rational trier of fact could have inferred that, when defendant ordered the victim to pull down her pants and pulled down his own before climbing on top of her, he intended to penetrate the victim.
This assignment of error has no merit.

EXCESSIVE SENTENCE

(Assignments of Error No. 10 and Supplemental Assignment of Error No. IV)
Defendant asserts the trial court erred by imposing an excessive sentence. He submits that the trial court failed to comply with the mandatory sentencing criteria of La.C.Cr.P. art. 894.1, requiring the court to consider the facts and circumstances of the particular case and impose a sentence appropriate to the individual. Defendant contends the court erred in imposing a sentence based only on defendant's age, prior criminal history and the weight of the evidence, without consideration of his mental and physical condition. Further, he argues that, although defendant has an extensive history of arrests, these were crimes of a nonviolent nature and do not justify the sentence imposed by the court.
The crime of aggravated rape is punishable by life imprisonment at hard labor, without benefit of probation, parole or suspension of sentence. La.R.S. 14:42. The maximum sentence which can be imposed for attempted aggravated rape is fifty years at hard labor. La.R.S. 14:27 and 14:42. The court imposed a sentence of thirty-five years at hard labor.
The presentence investigation report reveals that defendant has the Acquired Immune Deficiency Syndrome (AIDS). He argues that this disease has caused a marked deterioration in his mental and physical condition which should have been considered by the trial court. The transcript of the sentencing hearing reflects that, although the diagnosis of AIDS had been confirmed weeks before the sentencing, defendant did not urge his deteriorating condition as a mitigating factor at any stage of the proceedings prior to this appeal. While the presentence investigation report relates a statement by Dr. DeVillier that defendant's condition had deteriorated to the point where it affected his ability to think, Dr. DeVillier further opined that defendant was competent to stand trial and assist counsel. Moreover, Dr. DeVillier made this assessment after meeting with defendant numerous times and after withdrawing his earlier conclusion that defendant was not competent. The trial court stated it had reviewed the presentence investigation report, which included the diagnosis and the assessment of Dr. DeVillier. Thus, on the record before us, we cannot say that the trial court erred in the weight it ascribed to the evidence of defendant's condition.
Defendant further argues that the court erred in considering his lengthy record of offenses without further consideration of the fact that these offenses were for nonviolent crimes. In imposing sentence, the court noted that defendant had been arrested approximately forty-five times. The court noted that, although most of his arrests were for drug violations, defendant had been convicted of prostitution and had been arrested for other major offenses. The presentence investigation reveals that defendant had previously been arrested for four counts of burglary, having been convicted of second degree burglary in California. *960 Defendant's record also reveals three arrests for vandalism, eight counts of disorderly conduct, four counts of resisting an officer, and battery; other arrests include weapon violations, and a warrant was outstanding for another charge.
Prior criminal activity which the sentencing court may consider is not limited to prior convictions. State v. Washington, 414 So.2d 313 (La.1982). The trial court properly considered defendant's numerous arrests and the fact that he had received several probated sentences for these offenses. The court noted that, even after receiving probation, defendant continued to live outside the laws of society. Considering the wide discretion of the trial court, we do not find the court erred in the imposition of this sentence.
These assignments of error are without merit.

FAILURE OF MEMBER OF THE LUNACY COMMISSION TO EXAMINE THE DEFENDANT

(Supplemental Assignment of Error No. II)
The defendant contends the trial court erred by not sustaining his objection that two doctors did not examine him to determine his mental capacity to proceed as required by La.C.Cr.P. art. 644(A).
On January 15, 1986, the defendant filed an application for hearing to determine defendant's mental condition alleging he was presently insane and insane at the time of the alleged offense. Defendant prayed that two physicians be appointed to examine him "with regard to his present mental condition" and report to the court. On January 21, 1986, the trial court appointed Drs. DeVillier and George Healy to examine the defendant and report their findings to the court in thirty days. The court fixed a contradictory hearing on the defendant's capacity to proceed for March 12, 1986. On March 12, 1986, all pending motions were continued to April 7, 1986.
On April 7, 1986, the motion to determine the defendant's mental capacity to proceed was the first heard by the trial court. (Pursuant to La.C.Cr.P. art. 642, once the question of a defendant's capacity to proceed is raised, no further steps can be taken in a criminal prosecution.) The state called Dr. DeVillier as its witness. In his written report dated April 7, 1986, which was filed in the record that same date, Dr. DeVillier observed as follows:
CAPACITY TO STAND TRIAL: The subject is aware of the nature of the proceedings. He understands the nature of the charges and appreciates their seriousness. He understands what defenses are available or could be made to understand these defenses. He can distinguish a quility [sic] plea from a not guilty plea and understands the consequences of each. He has an awareness of his legal rights, and he could be made to understand the range of possible verdicts and the consequences of conviction. The subject has the ability to adequately assist in his defense in that he is able to recall and relate facts pertaining to his actions and whereabouts. He is able to assist counsel in locating and examing [sic] relevant witnesses. He is able to maintain a consistent defense. He is able to listen to the testimony of witnesses and inform his lawyer of any distortions or misstatements. He has the ability to make simple decisions in response to well-explained alternatives. He is capable of testifying in his own defense. His mental condition is not apt to deteriorate under the stress of a trial.
PSYCHIATRIC IMPRESSION: In my opinion the subject is legally sane in that he understands right from wrong. Mentally competent in that he can assist counsel in his own defense, and understands the nature of the charges.
In his testimony, Dr. DeVillier reiterated these views. Dr. DeVillier further testified that defendant was not functioning well at the time of the examination and had a difficult time relating (presumably, to other persons). Dr. DeVillier testified he felt defendant had an atypical or borderline personality disorder.
Defendant presented the lay testimony of Ellen Evans, an attorney with the Public *961 Defender's Office who had represented defendant at an earlier stage in the proceedings. Ms. Evans testified that, although defendant initially comprehended the charges and his legal rights, over time his physical and mental conditions deteriorated to the point where he was no longer able to answer very simple questions. Ms. Evans concluded with her opinion that defendant lacked the ability to communicate with her that was necessary for her to represent him at trial.
The sanity hearing was conducted without the benefit of a written report or testimony by Dr. Healy. No mention was made of this omission nor objection lodged to the limited medical evidence. The court found defendant competent to stand trial. Specifically, at the conclusion of the hearing, the following occurred:
BY MR. GUILLORY [counsel for defendant]: No further witnesses, Your Honor.
BY THE COURT: Is that it? All right, the Court finds from the evidence, the testimony before the Court of Dr. DeVillier, that this defendant has the present mental capacity to proceed.
All right, what about your other motion?
BY MR. GUILLORY: Your Honor, I'd like to ask that we could reserve the right to reurge this motion. We have subpoenaed medical records from the Disease Control Center in Atlanta as to whether or not Mr. Waymire has the AIDS virus, and we'd like to read those, you know, as to how that would affect his ability to assist us.
BY THE COURT: You're just going to have to file another motion that he doesn't have the mental capacity to proceed if you feel the evidence warrants the filing of such a motion. At the present time based on what I have before me now, and that's what I'm basing my ruling on, is that this defendant does have the present mental capacity to proceed.
BY MR. GUILLORY: Okay. Thank you, Your Honor.
No supplemental motion to determine present capacity to proceed was filed.
The trial herein commenced on April 15, 1986. Prior to the commencement of the voir dire, the following occurred:
BY MR. FOLEY [counsel for defendant]: Per the lunacy hearing on this matter from April 7, it's my understanding, at least my understanding from reviewing the record, although Dr. Healy was appointed to exam our client, apparently he never signed the report that was submitted to the Court on the lunacy on April 7.
BY THE COURT: Well, has there been a hearing on the lunacy?
BY MS. SLAUGHTER: Yes. We had Dr. DeVillier testify. He signed the report, and his report which he signed has been entered into the record from the lunacy hearing. I have no indication that Dr. Healy even examined him. Of course his signature doesn't appear on the report.
BY THE COURT: Well, I don't think that has any bearing on the decision toif he's already been held competent to stand trial at a hearing, then the Court is going to maintain that same position.
BY MR. FOLEY: Yes, sir. I respectfully object for the record.
BY MS. SLAUGHTER: For the record, Your Honor, we'll make sure that Dr. Healy did not examine him. And if he did, we'll get in touch with him.
It is well settled that defense counsel must state the basis for his objection when making it and point out the specified error which the trial court is making. La. C.Cr.P. art. 841; State v. Williams, 374 So.2d 1215 (La.1979); State v. Brown, 481 So.2d 679 (La.App. 1st Cir.1985), writ denied, 486 So.2d 747 (La.1986). Failure to make an objection waives the objection. The grounds of objection must be sufficiently brought to the attention of the trial court to allow him the opportunity to make the proper ruling and correct any claimed prejudice. State v. Harris, 414 So.2d 325 (La.1982). A defendant is limited on appeal to grounds for objection articulated to the trial court. A new basis for objection, albeit meritorious, cannot be raised for the *962 first time on appeal. State v. Clayton, 427 So.2d 827 (La.1983).
Because a defendant in a criminal case is presumed sane and responsible for his actions, he bears the burden of proving by a preponderance of the evidence that he does not have the mental capacity to proceed. La.R.S. 15:432; State v. Narcisse, 426 So.2d 118 (La.1983); State v. Dorsey, 447 So.2d 636 (La.App. 1st Cir.1984). At a contradictory hearing to determine a defendant's mental capacity to proceed, he may call the members of the sanity commission as witnesses and cross-examine them. La. C.Cr.P. art. 647. Copies of the sanity commission report are available to a defendant or his counsel without cost. La.C.Cr.P. art. 645. Although La.C.Cr.P. art. 645 provides that "[t]he report of the sanity commission shall be filed in triplicate with the presiding judge ...", the filing of a joint report is not sacramental. State v. Lighten, 367 So.2d 372 (La.1979). Further, failure to file a report or failure to appoint (or have examinations by) at least two physicians are errors that are waived by failure to make timely objection. State v. Goldberg, 389 So.2d 1270 (La.1980); State v. Augustine, 241 La. 761, 131 So.2d 56 (1961).
In the instant case, the defendant did not object to holding the contradictory hearing on the motion to determine present capacity to proceed without a report from or the testimony of Dr. Healy. Thus, the propriety of conducting the hearing and the ruling therefrom cannot be attacked now on those grounds. (Of course, the defendant can still attack the merits of the ruling.)
Prior to the commencement of the voir dire, counsel for the defendant told the trial court that "he [Dr. Healy] never signed the report that was submitted to the Court on the lunacy on April 7." [Emphasis added.] As previously indicated, under the holding of the Lighten case, the filing of a joint report is not sacramental. Counsel for the defendant did not request a new lunacy hearing, as he previously had reserved the right to do; he did not ask for a continuance to get a report from Dr. Healy; the record does not reflect that Dr. Healy was ever subpoenaed to testify; and the defendant did not plead not guilty by reason of insanity to raise the issue of his sanity at the time of the commission of the crime. In this factual posture, this objection has no merit.
On appeal, the defendant contends "Two (2) Doctors Did Not Examine The Defendant As Required By The Louisiana Code Of Criminal Procedure." This claim is different from that asserted in the trial court. As previously indicated, a defendant is limited on appeal to the grounds for objection asserted in the trial court; a new basis for objection cannot be raised for the first time on appeal. Further, even if we agreed to address the merits of the defendant's claim, we would be unable to do so. No evidentiary hearing was held on the issue of whether or not Dr. Healy examined the defendant and/or rendered a report, and the record is totally devoid of any evidence to support, or refute, the claim. In this posture, the proper procedure to raise the claim is in an application for post conviction relief, La.C.Cr.P. art. 924 et seq. Cf. State v. Richards, 426 So.2d 1314 (La. 1982). Finally, even if this new claim had merit, a reversal of the conviction and sentence may not be necessary. In other cases where error in lunacy proceedings was timely objected to, the Louisiana Supreme Court has conditionally affirmed, subject to a remand for a new lunacy commission to determine the defendant's mental capacity. State v. Knox, 370 So.2d 886 (La.1979); State v. Jones, 368 So.2d 1023 (La.1979).
This assignment of error is without merit.

DEFENDANT'S MENTAL CAPACITY TO PROCEED

(Assignment of Error No. I)
The defendant contends the trial court committed error by finding he was competent to stand trial.
The ruling of a trial court on a defendant's mental capacity to proceed is entitled to great weight on appellate review and *963 will not be overturned absent an abuse of discretion. State v. Brogdon, 426 So.2d 158 (La.1983); Dorsey, 447 So.2d at 638. We have reviewed the record and cannot say the trial court abused its discretion herein.
This assignment of error is without merit.

DECREE
For the foregoing reasons, the conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Initially, the defendant filed eleven assignments of error. Later, he was allowed to amend to add four supplemental assignments which he designated as supplemental assignments of error I, II, III, and IV. The assignments actually briefed were 3, 4, 6, 10, 11 and supplemental assignments I, II and IV.