621 So.2d 884 (1993)
STATE of Louisiana
v.
Loyal WHITE.
No. 92-KA-0500.
Court of Appeal of Louisiana, Fourth Circuit.
July 15, 1993.
*886 Harry F. Connick, Dist. Atty. of Orleans Parish, Susan M. Erlanger, Asst. Dist. Atty. of Orleans Parish, New Orleans, for State.
M. Craig Colwart, Orleans Indigent Defender Program, New Orleans, for defendant.
Before PLOTKIN, JONES and MOON, JJ.
PLOTKIN, Judge.
The defendant, Loyal White, was charged with one count of attempted aggravated rape, in violation of LSA-R.S. 14:27, 14:42, and aggravated burglary of an inhabited dwelling, in violation of LSA-R.S. 14:60. The defendant was found guilty as charged on both counts. He was sentenced to serve fifty years at hard labor with credit for time served on the attempted aggravated rape charge, and thirty years at hard labor with credit for time served on the aggravated burglary conviction. The sentences were to run concurrently.
The state filed a multiple bill of information to which the defendant pled not guilty. The trial court found the defendant to be a second felony offender, vacated the sentence imposed on the attempted aggravated rape count, and resentenced the defendant to seventy-five years at hard labor without benefit of probation, parole or suspension of sentence. The sentence on the multiple bill was to run concurrently with the sentence imposed on the aggravated burglary conviction.
On September 4, 1989, the victim, N.A., lived at 3207 Jackson Avenue with her two children, Ricky, three years old, and Princess, four months old. At approximately 3:30 a.m., N.A. was awakened by her baby. When she put the garbage out, she saw the defendant, whom she recognized as the man who lived down the street with her friend, Linda Russel. The defendant approached her and asked her for $20.00. She refused and ran inside because his demeanor made her nervous. As she tended to the baby, she heard some strange noises coming from her living room. When she went to investigate, she found that the defendant had kicked in her front door. The defendant began beating her. He wrapped her robe around her head and dragged her into the bedroom, where the children were located. The defendant threw the victim on the bed and exposed his penis. He then forced her to remove her underwear. The defendant fondled himself as he made lewd statements to her.
The defendant continued to beat the victim in the face and at one point threatened to kill her with an iron she stored behind the bedroom door. Defendant then ransacked the victim's dresser drawers. In a red purse, the defendant found and removed $200.00. He continued to beat the victim and ultimately fled the scene.
After the defendant left, the victim ran to the liquor store across the street where Linda Russel worked. The victim told Ms. Russel what happened and asked her to call the police. During the police investigation, the officers removed from the victim's residence a blood-stained nightgown, a blood-stained pillow case, and a beige shirt, which was later identified as belonging to the defendant.
Detective Ronald Pugh of the New Orleans Police Department Rape Investigative Section took the victim to Touro Hospital *887 for medical attention. He observed that the victim's face was extremely swollen and bruised.
In an effort to locate the defendant, the police officers went to Linda Russel's house. The defendant was not there but Cynthia Russel, Linda Russel's daughter, gave the officers a photograph of the defendant. Detective Pugh showed this photograph to the victim who identified the defendant as the man who tried to rape her. Detective Pugh also showed the photograph to Ms. Russel who identified the subject in the photograph as the defendant. Ms. Russel also identified the brown shirt removed from the crime scene as belonging to the defendant. An arrest warrant was obtained for the defendant who remained at large until December 3, 1990.
At trial, Ms. Russel also testified that when she saw the defendant the evening prior to the attempted rape, he was wearing a khaki shirt, but when he came to see her at the liquor store the morning of the crime, he did not have a shirt on. Ms. Russel further stated that she did not see the defendant after that morning, and they had not discussed his moving out. In fact, the defendant left several of his belongings at her house, but never returned.
Defendant testified on his own behalf at trial. He denied any involvement in the alleged crimes and stated that he went to work around 5:30 or 6:00 a.m. that day. The defendant testified that when he learned that he was wanted by the police, he stayed at his sister's house for a month, and then returned to live with Ms. Russel until his arrest. The defendant contended that the victim was identifying him as the perpetrator because he had reported her to the child abuse authorities and because she had caught the defendant's sister with her boyfriend.

Assignment of Error No. 1
In his first assignment of error, the defendant contends that the state failed to present sufficient evidence to sustain the defendant's conviction for attempted aggravated rape beyond a reasonable doubt.
When assessing the sufficiency of evidence to support a conviction, the appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La.1987).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. LSA-R.S. 15:438. LSA-R.S. 15:438 is not a separate test from Jackson v. Virginia, supra, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, supra.
Rape is the act of anal or vaginal sexual intercourse with a male or female committed without the person's lawful consent. LSA-R.S. 14:41(A). Aggravated rape occurs when the victim (1) resists the act to the utmost, but whose resistance is overcome by force or (2) is prevented from resisting the act by threats of great and immediately bodily harm, accompanied by apparent power of execution. LSA-R.S. 14:42(A)(1) and (2). An attempt is committed when a defendant, after having formed the intent to commit rape, does an act for the purpose of and intending directly toward the accomplishing of the objective. LSA-R.S. 14:27(A). Mere preparation to commit rape is not sufficient to constitute an attempt. LSA-R.S. 14:27(B).
Defendant contends that the testimony presented is insufficient to prove that he had the specific intent to penetrate the *888 victim. He argues that the evidence only supports a finding that the defendant intended to masturbate while watching the unclothed victim. In similar cases, the courts have found such evidence sufficient to support a verdict of attempted aggravated rape. In State v. Waymire, 504 So.2d 953 (La.App. 1st Cir.1987), the court concluded that any rational trier of fact could have inferred that when the defendant ordered the victim to pull down her pants and pulled down his own before climbing on top of her, he intended to penetrate the victim.
The defendant in State v. Redd, 554 So.2d 780 (La.App. 5th Cir.1989) argued that the evidence was insufficient to prove that he had the specific intent to engage in intercourse with the victim. The appellate court found that the evidence was sufficient for the jury to infer that the defendant had the specific intent. In Redd, the defendant ordered the victim, from across the room, to remove her pants. He did not touch her in a sexual manner, nor did he remove any of his own clothing or communicate anything to the victim prior to her escape to indicate the purpose of the attack. The defendant had entered the victim's home on the pretense of selling some books and had stabbed the victim several times before she was able to escape. The defendant in Redd was also convicted of aggravated burglary.
In the present case, the victim testified that the defendant dragged her into the bedroom, exposed himself, and forced her to take off her pants. The defendant then began to fondle himself while asking her "Do you want to fuck?" All during this time, the defendant continued to beat the victim about the head and face. At one point, the defendant threatened to kill the victim with an iron she had behind her bedroom door. With this evidence before it, the jury was reasonable in concluding that defendant possessed the specific intent to rape the victim.
Next the defendant contends that since most of the injuries to the victim were sustained during the time the defendant was demanding money, the evidence supports a finding that only minimal force was used in any alleged overt act to attempt the rape. Thus, the evidence, at best, supports a verdict of attempted forcible rape.
The Supreme Court stated in State v. Willie, 422 So.2d 1128, 1129 (La.1982) the following:
[A]lthough the legal definition of aggravated rape as set forth in La.R.S. 14:42(2) is virtually identical to that of forcible rape (La.R.S. 14:42.1), a distinction can be made based on the "degree of force employed and the extent to which the victim resists." We concluded that it was the legislative aim to divide the continuum of acts of coerced sexual intercourse into two categories, aggravated rape and forcible rape, thereby assigning to the jury the function of fixing the range of permissible punishment for convicted offenders by returning a verdict which appropriately fits the crime and the degree of force employed.
Therefore, it is within the province of the jury to determine the degree of force employed in a particular case and to determine whether the act constituted aggravated, rather than forcible, rape. In the instant case, the defendant dragged the victim into her bedroom, beat her repeatedly, forced her to take her pants off and wielded an iron at her, threatening to beat her with it. The jury had before it the responsive verdict of attempted forcible rape but determined that the amount of force employed in this case amounted to an attempted aggravated rape. The evidence supports this conclusion.
This assignment is without merit.

Assignment of Error No. 2
In this assignment, the defendant alleges that the trial court erred in sentencing the defendant immediately after denying defendant's motion for a new trial without affording the delays provided for in La. C.Cr.P. article 873. The record supports this contention.
The minute entry and docketmaster entry of August 28, 1991, reveal that on the same day the defendant was sentenced, a motion for new trial was filed. However, *889 these entries do not indicate whether the motion for new trial was denied prior to sentencing. The transcript of the sentencing hearing is unavailable as the court reporter for Section "A" is no longer employed by Criminal District Court and has informed this Court that her tapes and notes from that date are missing. This Court, on December 4, 1992, ordered the trial court to review the record to determine "whether the defendant's motion for new trial was denied prior to sentencing on August 28, 1991, and to issue a per curiam to this Court with his findings within thirty days of the issuance of this order."
On March 8, 1993, the trial court entered its finding into the record that "defendant's motion for a new trial was NOT DENIED prior to sentencing according to the court record's minute entries."
Under Louisiana Code of Criminal Procedure article 853, a motion for new trial must be filed and disposed of before sentence. The trial court's failure to rule on the merits of a motion for new trial prior to sentencing constitutes an error patent on the face of the record, and requires vacation of the sentence and remand. State v. Smith, 553 So.2d 934 (La.App. 4th Cir. 1989). However, because the defendant's original sentence was vacated during his multiple billing, the failure to rule on the motion for new trial before the original sentencing was cured.

Assignment of Error No. 3
In this assignment of error, the defendant argues that the sentences imposed on both counts on August 28, 1991, were constitutionally excessive and that the sentence imposed under the multiple bill was illegal.
Article 1, Section 20 of the Louisiana Constitution of 1974 provides that "No law shall subject any person ... to cruel, excessive or unusual punishment." A sentence within the statutory limit is constitutionally excessive if it is "grossly out of proportion to the severity of the crime" or is "nothing more than the purposeless imposition of pain and suffering." State v. Brogdon, 457 So.2d 616, 625 (La. 1984), cert. denied, Brogdon v. Louisiana, 471 U.S. 1111, 105 S.Ct. 2345, 85 L.Ed.2d 862 (1985); State v. Caston, 477 So.2d 868, 871 (La.App. 4th Cir.1985). Generally, a reviewing court must determine whether the trial judge adequately complied with the sentencing guidelines set forth in LSA-C.Cr.P. art. 894.1 and whether the sentence is warranted in light of the particular circumstances of the case. State v. Soco, 441 So.2d 719 (La.1983); State v. Quebedeaux, 424 So.2d 1009 (La.1982).
If adequate compliance with Article 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of his case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Brogdon, supra; State v. Quebedeaux, supra; State v. Guajardo, 428 So.2d 468 (La.1983).
In the present matter, the transcript from the sentencing hearing held on August 28, 1991, is not available. Therefore, this Court is unable to discern whether the trial court complied with LSA-C.Cr.P. article 894.1 in imposing sentence upon the defendant. Further, a review of the multiple bill transcript reveals that the trial court did not provide reasons nor did it refer to the reasons given at the original sentencing when it sentenced the defendant under the multiple bill of information. Without reasons from the trial court for the sentence imposed, there is nothing in the record that justifies the sentence imposed. Therefore, on remand, the trial court is ordered to consider the sentencing guidelines or present sufficient justification for exceeding the guidelines' recommendation.
In addition, the sentence imposed by the trial court under the multiple bill is illegal. Upon finding the defendant to be a second felony offender, the trial court vacated the initial sentence imposed on the attempted aggravated rape conviction, and resentenced the defendant to serve seventy-five years at hard labor without benefit of parole, probation or suspension. Neither *890 LSA-R.S. 14:27, 14:42 or LSA-R.S. 15:529.1 require that the sentences imposed under these statutes be served without benefit of parole.
Accordingly, defendant's convictions of aggravated burglary and attempted aggravated rape are affirmed. Defendant's sentences are vacated and this case is remanded to the trial court for resentencing consistent with the holding of this opinion.