635 So.2d 731 (1994)
STATE of Louisiana
v.
Michael David GUIDRY.
No. 93 KA 1091.
Court of Appeal of Louisiana, First Circuit.
April 8, 1994.
*733 Stephen P. Callahan, Asst. Dist. Atty., Houma, for appellee, State.
William H. Dunckelman, Indigent Defender, Houma, for appellant, Michael David Guidry.
Before LOTTINGER, C.J., and CRAIN and LeBLANC, JJ.
CRAIN, Judge.
Michael David Guidry was charged by bill of information with simple arson, a violation of La.R.S. 14:52(A). He filed a motion to suppress confession, which the court denied. Defendant then pled guilty, reserving his right to appeal the court's denial of the motion. See State v. Crosby, 338 So.2d 584, 586 (La.1976). The court sentenced him to serve a term of two and one-half years imprisonment at hard labor. Defendant has appealed, urging in a single assignment of error that the court erred when it denied the motion to suppress.
Because defendant pled guilty, the facts of the offense were not fully developed. Defendant was billed with setting fire to a residence belonging to James and Edna Pate located in Montegut. In a signed statement, defendant indicated that late one night he went to a lounge to drink beer and dance. When he noticed his wife and the man she was with were both drinking, he asked his wife why she wanted to divorce him because he drank. His wife refused to talk to him, and she later left the lounge. At about 1:35 a.m. (on November 4, 1991), defendant left the bar and bought a beer at a convenience store. He then went to a house on Roland Street, walked in the unlocked back door, and set a paper bag on fire in the living room, making sure the fire touched the sofa. He then left the house, went to his brother's house, and told his brother's wife to call the fire department. From defendant's statement, it is not clear who resided in the house; but it appears possible that defendant formerly resided in the house with his wife and that his wife was still living in the house on the date of the offense.

DENIAL OF MOTION TO SUPPRESS
In his assignment of error, defendant argues the court erred when it denied his motion to suppress his confession and inculpatory statements. He asserts the waiver of his constitutional rights was involuntary because of his mental abnormality and intoxicated condition.
It is well-settled that for a confession or inculpatory statement to be admissible into evidence, the state must affirmatively show that it was freely and voluntarily given without influence of fear, duress, intimidation, menaces, threats, inducements, or promises. La.R.S. 15:451. Additionally, the state must show that an accused who makes a statement or confession during custodial interrogation was first advised of his Miranda rights. State v. King, 563 So.2d 449, 453 (La.App. 1st Cir.), writ denied, 567 So.2d 610 (La.1990).
The admissibility of a confession is, in the first instance, a question for the trial court; its conclusions on the credibility and weight of the testimony relating to the voluntary nature of the confession are accorded great weight and will not be overturned unless *734 they are not supported by the evidence. State v. Sanford, 569 So.2d 147, 150 (La.App. 1st Cir.1990), writ denied, 623 So.2d 1299 (La.1993). Whether or not a showing of voluntariness has been made is analyzed on a case by case basis with regard to the facts and circumstances of each case. State v. Benoit, 440 So.2d 129, 131 (La.1983). The trial court must consider the totality of the circumstances in deciding whether or not a confession is admissible. State v. Hernandez, 432 So.2d 350, 352 (La.App. 1st Cir. 1983).
With regard to the relationship between diminished mental or intellectual capacity and involuntariness, the Louisiana Supreme Court has noted that such a condition does not of itself vitiate the ability to knowingly and intelligently waive constitutional rights and make a free and voluntary confession. Benoit, 440 So.2d at 131. The critical factors are whether or not the defendant was able to understand the rights explained to him and whether or not he voluntarily gave a statement. State v. Young, 576 So.2d 1048, 1053 (La.App. 1st Cir.), writ denied, 584 So.2d 679 (La.1991).
The state may rely on the presumption of sanity provided in La.R.S. 15:432, leaving to the defendant the initial burden of proving the existence of a mental abnormality which, under the circumstances, may have destroyed the voluntary nature of his confession. See State v. Waymire, 504 So.2d 953, 958 (La.App. 1st Cir.1987). Because a defendant is presumed competent, he has the burden of proving a mental defect such that he was unable to understand his Miranda rights and, therefore, incompetent to waive them. State v. Ondek, 584 So.2d 282, 292-293 (La.App. 1st Cir.), writ denied, 586 So.2d 539 (La.1991). Once such a mental defect is established, the state bears the ultimate burden of proving that the defendant's mental defect did not preclude him from giving a voluntary and free confession with a knowledgeable and intelligent waiver of his rights. See Ondek, 584 So.2d at 292. However, if the defendant fails to prove the existence of a mental illness or defect, or fails to prove that such a disorder prevented his confession from being voluntary, while the state is not required to negate the defendant's mental abnormality, it still must in all other respects prove beyond a reasonable doubt that the confession was voluntary. Waymire, 504 So.2d at 958.
When the free and voluntary nature of a confession is challenged on the ground the defendant was intoxicated at the time of the confession, the confession will be rendered inadmissible only if the intoxication is of such a degree as to negate the defendant's comprehension and to make him unconscious of the consequences of what he is saying. Whether or not intoxication exists and is sufficient to vitiate the voluntariness of a confession are questions of fact, and the trial court's ruling on this issue will not be disturbed unless unsupported by the evidence. State v. Williams, 602 So.2d 318, 319 (La.App. 1st Cir.), writ denied, 605 So.2d 1125 (La.1992).
At the hearing held on the motion to suppress, Lt. Elron Fanguy of the Terrebonne Parish Sheriff's Office testified that he first spoke to defendant about the offense at about 4:35 a.m. at the scene. When he spoke to defendant at that time, he noticed a smell of alcohol on defendant's breath but did not think defendant appeared highly intoxicated. He asked defendant some questions about his whereabouts when the fire began. Defendant did not make any inculpatory statements at that time.
Fanguy had defendant come to the sheriff's office in the afternoon of that same day for an interview. According to Fanguy, defendant was sober at the station. Fanguy noticed that defendant appeared nervous and was shaking noticeably. Although defendant did not look at Fanguy during the interview, defendant's answers were responsive to the questions. Defendant told Fanguy that he was mentally handicapped and had attended special schools for the mentally handicapped. Prior to the interview, Fanguy advised defendant of his Miranda rights, using a standard rights form. Because defendant told Fanguy he could not read or write, Fanguy read the entire form to him. After reading each right, Fanguy explained the right. For example, after advising defendant that he had *735 the right to remain silent, Fanguy told defendant this meant he did not have to talk to Fanguy and did not have to say anything. Fanguy explained the other rights in a similar fashion. After Fanguy read each right, defendant indicated he understood the right and placed his initials next to each line. Fanguy testified that defendant appeared to understand his rights. Defendant signed the form, acknowledging he understood his rights and indicating he wished to waive his rights and make a statement.
Initially, defendant denied setting the fire. He explained that he had wanted to talk to his wife when he left the lounge. On the way to see his wife, he stopped at a convenience store and bought a beer. When he got to the house, he noticed the house was on fire and notified a nearby relative. Defendant also admitted having an alcohol problem. When Fanguy asked defendant if he would be willing to take a lie detector test, defendant started crying and shaking and admitted starting the fire by lighting the paper bag he got at the convenience store. Defendant then dictated a statement to Fanguy. Fanguy typed the statement and read it to defendant. After Fanguy made sure defendant understood the statement, he had defendant sign the statement. Fanguy indicated that throughout the questioning defendant never indicated he did not want to answer any questions and never requested an attorney.
Defendant called Dr. Clarence Bergeron as an expert witness in the field of psychology. Bergeron testified that he evaluated defendant several years earlier (in 1985) in connection with defendant's application for Social Security disability payments. In connection with that evaluation, Bergeron concluded defendant had an IQ of 65. Thus, he classified defendant as being mildly mentally retarded. According to Bergeron, it would be very unlikely for defendant's intelligence to have improved during the interim. When asked if a person who is mildly mentally retarded would have any difficulty understanding their constitutional rights, Bergeron testified that it would be difficult for the person to understand the rights. He indicated that the way the rights were explained would be very important. Bergeron was in the courtroom during Fanguy's testimony; and he admitted that Fanguy's method of breaking down each right and explaining each phrase would have assisted defendant in understanding the rights. According to Bergeron, a person who was under a high degree of stress, signified by crying and trembling, would have more difficulty understanding things presented to them.
Defendant also testified at the hearing. He stated that he was a slow learner and had not been able to hold down a full-time job. He explained that he had been fired from jobs because he had been unable to learn the job. Defendant remembered the detective giving him a form to sign which had his constitutional rights on it; but he maintained that he did not understand that he did not have to answer the detective's questions. He claimed he was shaking during the questioning because he was scared. On cross-examination, the prosecutor questioned defendant about each of the Miranda rights and defendant indicated he understood the rights. He originally had no explanation for why he understood the rights in court but could not understand them when he was questioned by Fanguy. However, he then explained that he had done things to rehabilitate himself since the offense. Additionally, he had discussed constitutional rights with his attorney. Defendant admitted that he understood some of the rights when he was questioned by Fanguy, but he could not recall which rights he had understood.
Despite defendant's diminished intellectual capacity, it is apparent he understood the rights and voluntarily gave a statement to Fanguy. There is no indication defendant's mental condition caused him to be unable to understand his rights. According to the psychologist, a person in defendant's position would be able to understand the rights if each portion of the rights was explained, such as Fanguy did in this case. The court's rejection of defendant's testimony, wherein he claimed he did not understand some of the rights read to him by Fanguy, is supported by the evidence. The questions asked of defendant at the hearing, on both direct and cross-examination, appeared more complex than the rights form; yet defendant had no *736 difficulty responding to the questions in court. There also is no indication defendant's earlier consumption of alcohol, evident when he was briefly questioned at the scene, had any effect on his ability to comprehend the proceedings when he was questioned at the station. On appeal, defendant claims his intoxicated condition combined with the stress of being asked to take a lie detector test negated the voluntariness of the confession. However, defendant was sober when he was questioned at the station, and the emotional stress suffered by defendant was not so severe that defendant could not confess voluntarily. See State v. English, 582 So.2d 1358, 1364 (La.App.2d Cir.), writ denied, 584 So.2d 1172 (La.1991). See also State v. Williams, 383 So.2d 369, 371-72 (La.1980), cert. denied, 449 U.S. 1103, 101 S.Ct. 899, 66 L.Ed.2d 828 (1981).
The assignment of error is without merit.

PATENT ERROR
In reviewing the record for patent error, we have discovered error in the bill of information. The penalty for simple arson differs depending upon whether the amount of damage amounts to "five hundred dollars or more" or "less than five hundred dollars." La.R.S. 14:52(B) & (C). Thus, the amount of damage is essential to determine the grade of the offense for simple arson; and failure to allege the amount of damage in the bill of information is error. See La. C.Cr.P. art. 470 & comment. See also La. C.Cr.P. art. 464 & 465(A)(3); State v. Bass, 509 So.2d 176 (La.App. 1st Cir.1987) (value not alleged in simple criminal damage to property case); State v. Young, 469 So.2d 1014, 1021 (La.App. 1st Cir.1985) (value not alleged in theft case). However, the error is harmless under the facts of this case. See La.C.Cr.P. art. 921. Defendant has not alleged, nor have we found, any prejudice resulting from the state's error. Unlike the situation in State v. Jones, 610 So.2d 1014 (La.App. 1st Cir.1992), wherein the state's failure to charge the defendant with the specific grade of obstruction of justice resulted in the court failing to definitively advise the defendant of the appropriate penalty, the defendant in this case was advised of the sentencing range and does not claim he did not understand the true nature of the charge against him. During the Boykin examination and on the guilty plea form, the court advised defendant of the possible penalty, using the penalty provision for that grade of simple arson where the damage amounts to five hundred dollars or more. See La.R.S. 14:52(B). Moreover, the sentence imposed upon defendant, two and one-half years at hard labor, is appropriate for either grade of the offense. Accordingly, we decline to reverse on this ground.
In reviewing the sentence for patent error, we have found error in the sentence. Although the minutes indicate defendant was credited with time served, the transcript reveals that the trial court did not give defendant credit for time served. See La.C.Cr.P. art. 880. In the event of a discrepancy between the minutes and a transcript, the transcript prevails. See State v. Lynch, 441 So.2d 732, 734 (La.1983). Accordingly, we amend the sentence to reflect that defendant is to be given credit for any time served prior to execution of his sentence. See State v. Greer, 572 So.2d 1166, 1172 (La.App. 1st Cir.1990). Resentencing is not required. However, we remand the case and order the district court to amend the commitment to reflect that defendant is to be given credit for time served.
CONVICTION AFFIRMED. SENTENCE AS AMENDED, AFFIRMED. REMANDED WITH ORDER.