| .BYRNES, Judge.
STATEMENT OF CASE
The defendant, Kevin Powell, plead not guilty to a charge of purse snatching, a violation of La. R.S. 14:65.1. He pled not guilty on October 28, 1996. The defendant’s first trial ended in mistrial on May 28, 1998 and he was re-tried on October 15, 1998, after which the jury found him guilty as charged. He was sentenced on November 6, 1998, to twenty years at hard labor, with credit for time served, sentence to be served consecutively with any other sentence. On July 16,1999, the State filed a multiple bill to which the defendant pled not guilty.[1] The defendant was adjudged a fourth offender on August 13,1999. The court vacated his sentence and sentenced him pursuant to La. R.S. 15:529.1 to life imprisonment, without benefit of parole, probation or suspension of sentence.
STATEMENT OF FACT
On October 8, 1994, at approximately 12:80 p.m., NOPD Officer Arthur Harrison responded to a call reporting a purse snatching at the intersection of Agriculture and Allen Streets. Officer Harrison interviewed the victim, Ms. Beryl Hunter, who described her assailant as a black male, approximately twenty-five to | ¿thirty-five years of age, standing five foot eight or nine in height, weighing between one hundred forty and one hundred fifty pounds and wearing jeans and a striped shirt.
At approximately 1:30 p.m. on October 8,1994, Officer Ronald Bertucci executed a traffic stop on the defendant’s red Toyota. Officer Bertucci witnessed the defendant driving and drinking from an open beer can. The officer activated his vehicle’s lights to signal the defendant to pull over. As the defendant stopped his vehicle, Officer Bertucci noticed that the defendant’s passenger appeared to put something under the front seat. Officer Bertucci told the defendant why he stopped him and asked for his driver’s license. When the defendant could not produce his license, the officer ran the defendant’s name through the computer and learned that the license had been suspended. While talking to the defendant, Officer Bertucci noticed a driver’s license, wallet and checkbook on the floor on the front passenger side of the defendant’s vehicle. The passenger, a white male, told Officer Bertucci that the license belonged to his aunt; however, the license bore a picture of a black female. Officer Bertucci retrieved the checkbook and called the person listed on the checks. He spoke to the victim, Ms. Beryl Hunter, who told him her purse was snatched earlier that day by a black male driving a red car accompanied by a white male passenger. Office Bertucci cited the defendant for driving with a suspended license, and arrested him for possession of stolen property.
Officer Jeff Sislo participated in the follow up investigation of the purse snatching. Two days after the incident, Officer Sislo developed two photographic lineups for the victim. From the first group of pictures, Ms. Hunter identified the defendant’s picture as that of the person who snatched her purse. After viewing [sthe second group of photographs, she chose the picture of the man she identified as the second perpetrator. Ms. Hunter made the identifications quickly and without hesitation.
Ms. Beryl Hunter testified that her purse was snatched on October 8, 1994, on the corner of Agriculture and Allen Streets. As she crossed the street, a black male approached and told her hello, and then yanked her purse off her shoulder. He ran to a waiting red car and sped away. Two days after the incident, she identified the defendant as her assailant and Michael Roberts, the driver of the getaway car, from separate photographic lineups.
*70 At the close of the State’s case, the defendant moved for a directed verdict, which the court denied.[2]
The defense offered no witnesses; however, the State and the defense stipulated that Michael Roberts pled guilty to the crime of purse snatching in August of 1995.

ERRORS PATENT

A review of the record reveals that the trial judge faded to rule on defendant’s motion for a new trial until after he had sentenced defendant on the purse snatching conviction. Under La.C.Cr.P. art. 853, a motion for new trial must be filed and disposed of before sentence. The trial court’s failure to rule on the merits of a motion for new trial prior to sentencing constitutes an error patent on the face of the record, and requires vacation of the sentence and remand. State v. Smith, 553 So.2d 934 (La.App. 4 Cir.1989) writ den. 625 So.2d 1031 (La.1993). ^However, because the defendant’s original sentence was vacated as a result of his multiple offender adjudication, the error resulting from the court’s failure to rule on the motion for new trial before the original sentencing was cured. State v. White, 621 So.2d 884, 889 (La.App. 4 Cir.1993), writ denied, 93-1557 (La.1/7/94), 631 So.2d 440.
ASSIGNMENTS OF ERROR NUMBERS 1 AND 2
In his first and second assignments, the defendant argues that the evidence is insufficient to support the conviction and for that reason the trial court erred in denying his motion for a new trial. The defendant supports these assignments by attacking the identification as less than reliable because the victim engaged in a “process of elimination” to identify him as the perpetrator.
In its review for sufficiency of evidence, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the appellant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La.1987). To support a conviction for purse snatching, the State must prove: (1) a theft;[3] (2) of anything of value; (3) contained within a purse or wallet at the time of the theft; (4) from the person of another or which is in the immediate control of another; (5) by use of force, intimidation, or by snatching; (6) but not armed with a dangerous weapon. See R.S. 14:65.1.
|5In this case, the victim identified the defendant as the person who snatched her purse containing her wallet, driver’s license and checkbook. She testified that she had ample opportunity to view the defendant, as she “looked him in the eye” when she returned his greeting. Additionally, she watched him run to the getaway car, gave accurate physical and clothing descriptions to the police, and identified the defendant’s picture within forty-eight hours of the incident.
As for the defendant’s assertion that the identification was somehow suspect[4], the victim’s testimony indicates that she was certain of the defendant’s identity when she viewed the photographic lineup. Her deliberation, “process of elimination”, was simply an extra measure she employed to *71 eliminate any possibility of misidentification of the defendant as the perpetrator.
The evidence is sufficient to support the defendant’s conviction, and the trial court did not err in denying the defendant’s motion for new trial.
ASSIGNMENTS OF ERROR NUMBERS 3 AND 4
In his final assignments, the defendant claims the State failed to prove his identity as a multiple offender. He further argues that his predicate guilty pleas are constitutionally flawed. In light of these errors, he submits that the trial court erred in denying his motion to reconsider sentence.
To obtain a multiple bill conviction, the State is required to establish both the prior felony conviction and that the defendant is the same person convicted of that felony. State v. Hawthorne, 580 So.2d 1131 (La.App. 4 Cir.1991). Various methods are available to prove that the defendant on trial is the same person convicted of the prior felony offense, such as by testimony of witnesses, by expert | ^opinion as to the fingerprints of the accused when compared with those of the person previously convicted, by photographs contained in a duly authenticated record, or by evidence of identical driver’s license number, sex, race and date of birth. State v. Westbrook, 392 So.2d 1043 (La. 1980); State v. Curtis, 338 So.2d 662 (La. 1976); State v. Pitre, 532 So.2d 424 (La. App. 1 Cir.1988), writ den. 538 So.2d 590 (La.1989); State v. Savoy, 487 So.2d 485 (La.App. 3 Cir.1986).
The copy of the multiple bill of information in the record indicates that the defendant pled guilty to simple burglary in 1991 and 1984 and to possession of stolen property in 1989.
The habitual offender hearing transcript reflects that New Orleans Police Officer Raymond Loosemore fingerprinted the defendant on the date of the hearing, August 13, 1999, State’s exhibit 1. Officer Loose-more testified that he examined a packet of certified court documents from Jefferson Parish, which he identified as State’s exhibit 4. Included in exhibit 4 was a certified copy of the final disposition ledger documenting that Kevin Powell pled guilty to simple burglary on March 14, 1991 in Jefferson Parish case No. 90-5581. Officer Loosemore compared the fingerprints on the ledger with the fingerprints on exhibit 1, and concluded that both sets of fingerprints belonged to the defendant.
Continuing, Officer Loosemore testified that a certified packet of court documents from Jefferson Parish bearing case number 88-2149, documenting the defendant’s 1989 plea of guilty to the charge of possession of stolen property comprised State’s exhibit 3. The officer identified a certified copy of the bill of information charging the defendant with possession of stolen property. The officer compared the fingerprints on the bill to the fingerprints on State’s exhibit 1, and testified that the defendant made both sets of prints.
|7As to the third predicate offense, Officer Loosemore testified that State’s exhibit 2, a packet of certified court documents from Jefferson Parish bearing case number 84-1648, documented the defendant’s 1984 guilty plea to simple burglary. He examined the fingerprints on the certified copy of the arrest register for the simple burglary, and compared those fingerprints with prints on exhibit 1, and found that one and the same person, the defendant, Kevin Powell, made them.
As further proof of the defendant’s identity, the certified copies of the arrest registers for the defendant’s predicate offenses bear the same name, date of birth, height, weight, coloring, and Bureau of ID and FBI numbers.
In State v. Anderson, 99-1407 (La.App. 4 Cir. 1/26/2000), 753 So.2d 321, the defendant argued that because the fingerprints on the bill of information for a forgery conviction were not suitable for identification, the State failed to meet its burden. However, the State produced the arrest register for the offense. The arrest regis *72 ter contained fingerprints that an officer was able to identify as fingerprints belonging to the defendant. In addition, the State was able to match the arrest register with the certified copy of the forgery conviction through the defendant’s name, date of birth, date of offense, and case number and complaint’s name. In addition, defendant’s name, date of birth, social security and bureau of identification numbers were the same as the person who pled guilty to the forgery charge. This court found this information was sufficient, and that the State met its burden of proving that the defendant was the same person who pled guilty to the forgery charge.
In this case, the evidence and the testimony of the State’s expert are sufficient to prove that the defendant is the same person who pled guilty to the three predicate offenses;
| ¡¡However, the defendant also asserts that neither his 1984 guilty plea to simple burglary nor his 1989 plea to possession of stolen property was voluntary or knowingly made because the court failed to advise him of the maximum possible penalty for each of those offenses at the time it accepted his pleas.
Where a prior conviction resulted from a guilty plea, the State must show that the defendant was advised of his constitutional rights and that he knowingly waived those rights prior to the guilty plea, as required by Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). State v. Shelton, 621 So.2d 769, 779-80 (La.1993). If the defendant denies the allegations of the bill of information, the State has the burden of proving the existence of the prior guilty pleas and that defendant was represented by counsel. Shelton at 779. Once the State meets this burden, defendant must produce some affirmative evidence of an infringement of his rights or of a procedural irregularity. Thereafter, the State must prove the constitutionality of the plea. Id.
In proving the constitutionality of the plea, the State must produce either a “perfect” transcript of the Boykin colloquy between the defendant and the trial judge or any combination of (1) a guilty plea form, (2) a minute entry, or (3) an “imperfect” transcript. Shelton at 780. If anything less than a “perfect” transcript is presented, the trial court must weigh the evidence submitted by the defendant and the State to determine whether the State met its burden of proof that defendant’s prior guilty plea was informed and voluntary. Id
The State offered the waiver of rights and entry of plea forms for both predicate offenses contested by the defendant. The forms indicate that the judge advised the defendant of his Boykin rights: trial by jury, confrontation with accusers and right against compulsory self-incrimination. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). The defendant, his counsel and the judge signed each of the plea forms. Contemporaneous minute entries memorializing each plea attest that the defendant entered his plea with assistance of counsel, that the judge advised the defendant of his rights prior to accepting the guilty plea and that the defendant signified that he understood his rights.
There is no merit to the defendant’s assertion that the pleas do not reflect that the court advised the defendant of the maximum possible sentence to which he was exposed. On the plea to possession of stolen property, the form bears the notation: “The maximum sentence which I [as judge] can impose is 10 years at hard labor.” La.R.S. 14:69B(1) provides that upon conviction the penalty shall be imprisonment, with or without hard labor, for not more than ten years, or may a fine of not more than three thousand dollars, or both. The defendant received a sentence of thirty months.
As for his plea to simple burglary, the plea form indicates a maximum sentence of twelve years at hard labor. La. R.S. 14:62 *73 mandates a fine of not more than two thousand dollars, imprisonment with or without hard labor for not more than twelve years, or both. The court sentenced the defendant to three years with credit for time served.
The facts in State v. Ledet, 97-363 (La. App. 5 Cir. 10/18/97), 701 So.2d 1067 and State v. Williams, 554 So.2d 139 (La.App. 2d Cir.1989), both cited by the defendant, are so different from those of the instant case that they cannot influence this opinion.
In Ledet, the defendant pled guilty, induced by the trial court’s inaccurate representation that the maximum sentence exposure was fifty years, when in fact the maximum sentence was only thirty years. The defendant agreed to a sentence |inof twenty years thinking he was getting a sentence of less than half of that to which he was exposed. The appellate court vacated the sentence based on a finding that the appellant’s plea was not knowing and voluntary because of the inaccurate representation of the maximum penalty exposure.
In Williams the defendant pled guilty to armed robbery. During the Boykin hearing, the judge informed the defendant that “the maximum sentence which the court might impose will be imprisonment for up to ninety-nine years.” However, the judged failed to advise him that any time imposed would necessarily be at hard labor without benefit of parole, probation or suspension of sentence. On appeal, the Second Circuit concluded that the trial judge’s oversight constituted reversible error. The court reasoned that a sentence of ninety-nine years with eligibility for parole can be understood as a sentence of much less than ninety-nine years and one which a defendant might willingly risk by pleading guilty. The same sentence without benefit is, for all practical purposes, a life sentence, and one which a defendant might reasonably argue he did not willingly risk.
In State v. Young, 535 So.2d 1150 (La. App. 2 Cir.1988), the defendant, after receiving no information on maximum sentencing, was sentenced to the maximum possible sentence for the charge for which he pled guilty. Thus, the facts in State v. Young are so different from the instant case that that court’s conclusion regarding the necessity of informing the defendant of the maximum possible sentence is not persuasive when applied to the instant case.
Based on the foregoing analysis, Kevin Powell can show no prejudice arising out of the erroneous maximum sentencing information upon which he based his guilty plea. Accordingly, we find that if the furnishing of erroneous Inmaximum sentencing information under the facts of this case was error, it was harmless error.
DECREE
For the foregoing reasons the defendant’s conviction and sentence are affirmed.

CONVICTION AND SENTENCE AFFIRMED.

. This multiple bill was actually the second one filed in this case. The first was filed on November 6, 1998. The defendant pled not guilty.

. As noted in State v. Brooks, 452 So.2d 149 (La. 1984), a directed verdict is inappropriate in criminal cases; and its counterpart, a motion lor acquittal, is not available in cases tried by a jury. C.Cr.P. art. 778 provides that a motion for acquittal is available only where the judge alone tries the case.

. La.R.S. 14:67 defines "theft” as:
the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to' the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.

.The defendant's pre-trial motion to suppress the identification was denied.