ROLAND L. BELSOME, Judge.
 

 hOn September 23, 2009, the defendant, Joseph Hayes, was charged by bill of information with attempted second degree murder in violation of La. R.S. 14:(27)30.1. The defendant pled not guilty at his arraignment. On October 8, 2009, the defendant filed motions for discovery, for a preliminary hearing and to suppress evidence, identification and statement. A preliminary and suppression hearing was begun on March 19, 2010 and continued until April 19, 2010, at which time the trial court found probable cause and denied the motions to suppress. After a jury trial on June 21, 2010, the defendant was found guilty of aggravated battery. The trial court sentenced the defendant to serve ten years at hard labor with credit for time served. On the same date, the defendant filed motions for new trial and to reconsider sentence. The trial court denied both motions.
 

 STATEMENT OF FACT
 

 On August 15, 2009, New Orleans Police Officers Bret Mathes and Justin Ferris investigated an incident at the Easy Food Store at 8601 Hickory Street. When the officers arrived on the scene, they observed the store owner, Hamdi Zayed, ly
 
 *1251
 
 ing on the floor of the store bleeding from the head, leg and arm. The store was in disarray, and there was blood all over the floor. The officers spoke |2with Zayed briefly, who was transported to University Hospital by emergency medical personnel. The officers also spoke with Zayed’s son, Omar, who was a witness to the incident. The officers later went to the hospital to interview Zayed. The officers found a right foot tennis shoe, a metal pipe and a gray colored tee shirt on the scene. These items were found immediately outside the store’s entrance. The officers were not able to locate or informed of any other witnesses.
 

 New Orleans Police Officer Jacob Lundy testified that he arrested the defendant in the 8600 block of Hickory Street. He located the defendant based upon the perpetrator’s description and a call for service. When the officer located the defendant, the defendant had a minor laceration to the arm, which was red but not bleeding. The officer advised the defendant that he wanted to speak with him about an earlier crime. The defendant was initially cooperative. The officer advised the defendant of his
 
 Miranda
 
 rights. The defendant began making statements about the case. He stated that he was defending himself. According to the defendant, he was verbally accosted by the victim when the defendant entered the store. The victim allegedly cursed the defendant and told him to leave the store. Officer Lundy transported the defendant to the Second District Station. When they arrived at the station, the defendant became verbally aggressive and violent.
 

 When Detective Randi Gant arrived at the scene of the crime, the victim had already been transported to the hospital. She observed blood and a sneaker on the scene, and she waited for the crime lab technicians to arrive. After she supervised the crime lab technicians, she relocated to the Second District, where she met with the defendant. Detective Gant presented the defendant with a rights of arrestee form and advised him of his rights. The defendant stated that he understood his |,frights and signed the form. He indicated that he was willing to give a statement but did not want to be recorded. The defendant told the officer that when he entered the store, the victim, for no reason, began yelling at him and using racial slurs. The victim told him to get out the store, picked up a pipe and began hitting him. The defendant stated that he then left the store. The defendant told the officer that he did not hit the victim and had no physical contact with the victim. Detective Gant testified that the defendant was calm at the beginning of the interview but subsequently became defensive. The defendant was then taken to Central Lockup by other police officers.
 

 Detective Brian Baye testified that he conducted photographic lineup with Mr. Zayed while Zayed was in East Jefferson Hospital. The officer stated that Mr. Zayed identified the defendant in the photographic lineup.
 

 Dr. William Johnson, Jr., a neurosurgeon, testified that he treated Mr. Zayed in the emergency room of East Jefferson Hospital on August 21, 2009. Dr. Johnson stated that Zayed was generally stable but had obvious signs of injury to his head. Zayed was paralyzed on the left side of his body. A catscan was performed and showed that Zayed had a depressed skull fracture which caused a hemorrhage condition, i.e. a bruise in the brain. Dr. Johnson stated that this was a significant injury which could have been fatal if it had
 
 *1252
 
 caused bleeding or swelling in the brain. Mr. Zayed’s injuries were consistent with a blow to the head.
 

 Omar Zayed, the victim’s teenage son, was in the store when the incident occurred. He identified the defendant as the person who struck his father. Omar testified that after the defendant entered the store, the defendant and his father had an argument, and the defendant struck his father with a metal pipe. Omar stated that the defendant had the pipe in his hand when he came into the store. The | ¿defendant cursed at the victim, hitting him in the head and arms. Omar tried to help his father, but the defendant pushed him off. Omar stated that he tried to hit the defendant with a night stick. The defendant took the stick away and hit him with it. The defendant then pushed Omar’s father to the ground and continued to hit him. At this point, Omar’s father was on the floor, holding onto one of the defendant’s legs. The defendant dragged Omar’s father outside the store and fled. Omar stated that a woman, who was standing outside on her porch, saw part of the incident and called the police. She then came and helped Omar carry his father into the store. The police subsequently arrived, and his father was taken to the hospital. The defendant left behind a blue sneaker, which Omar identified at trial. Omar testified that his father never struck the defendant. Omar also stated that there was no one else in the store at the time of the incident.
 

 Hamdi Zayed testified that he was working in his store, Easy Food Store, on August 15, 2009, when the defendant entered the store. Zayed asked the defendant to leave. Zayed stated that he had previously told the defendant and his brother that they were not allowed in the store. The defendant walked out of the store and returned with a metal pipe. The defendant hit him with the pipe numerous times, and he fell to the ground. Omar, his son, tried to help him, but the defendant pushed his son away and continued striking him with the pipe. The defendant dragged him out of the store and continued to hit him. A woman came out of her house and yelled at the defendant. The defendant then ran off. At one point, the defendant told Zayed, “I am going to kill you.” The police subsequently arrived, and Zayed was taken to the hospital. Zayed recalled Detective Baye coming to the hospital and presenting him with a photographic lineup. Zayed identified the defendant in the photographic lineup. Zayed stated that at no time did he attempt |5to hit the defendant. Zayed also testified that Curtis Mathews was not in the store at the time of the incident. Mathews is another customer who was no longer allowed in the store because Zayed caught him stealing several times.
 

 Curtis Mathews testified on behalf of the defendant. He stated that he was in the store at the time of incident. Matthews testified that he had been hired by Zayed to load ice into the icemaker. He first saw the defendant standing outside the front door of the store. The victim was cursing at the defendant. At some point the victim got a pipe and started hitting the defendant. The defendant put his hand up to protect himself. During the struggle, the defendant got the pipe and hit the victim once or twice. The victim then fell. The defendant backed off. At that point, Mathews left the store. The last thing he observed was the victim holding defendant’s leg as the defendant walked out the store. Mathews admitted that he had been asked to leave the store on prior occasions because of a prior incident.
 

 
 *1253
 

 ERRORS PATENT AND ASSIGNMENT OF ERROR NUMBER 3
 

 A review of the record for errors patent reveals only one. The trial court sentenced the defendant prior to ruling on the motion for new trial filed the morning of the sentencing hearing. On July 27, 2010, the trial court sentenced the defendant to serve ten years at hard labor with credit for time served. On the same date, the defendant filed motions for new trial and to reconsider sentence. The trial court denied both motions after sentencing the defendant.
 

 La.C.Cr.P. article 873 states that if a motion for new trial or motion in arrest of judgment is filed, sentence shall not be imposed until at least twenty-four hours after the motion is denied, unless the defendant expressly waives the delay or pleads guilty. The defendant herein did not waive the delay. Failure of the trial court to observe the mandatory twenty-four hour delay after denial of a motion for [(¡new trial, where such delay is not waived, requires the sentence to be vacated and the case remanded for resentencing.
 
 State v. Augustine,
 
 555 So.2d 1331, 1333 (La.1990), superseded, in part, by statute as stated in
 
 State v. Martin,
 
 93-1915, pp. 2-3 (La.App. 4 Cir. 9/29/94), 643 So.2d 830, 832;
 
 State v. Melancon,
 
 2001-1656, p. 3 (La.App. 4 Cir. 8/21/02), 826 So.2d 633, 636;
 
 State v. Powell,
 
 2000-0484, p. 3 (La.App. 4 Cir. 1/24/01), 779 So.2d 67, 70. Because the defendant did not waive his right to the delay, the defendant’s sentence must be vacated and the matter remanded for resentencing.
 

 DISCUSSION
 

 ASSIGNMENTS OF ERROR NUMBER 1AND2
 

 In these assignments of error, the defendant contends that the trial court erred in allowing Dr. William Johnson to testify concerning his treatment of Mr. Zayed when no reference to the treatment had been included in the discovery responses provided to the defense, denying Mr. Hayes his right to effective cross examination. The defendant also argues that the prosecution failed to comply with the defense request for discovery and misled Mr. Hayes with regard to the strength of the state’s case to his detriment.
 

 La.C.Cr.P. article 718 provides:
 

 Subject to the limitation of Article 723, on motion of the defendant, the court shall order the district attorney to permit or authorize the defendant to inspect, copy, examine, test scientifically, photograph, or otherwise reproduce books, papers, documents, photographs, tangible objects, buildings, places, or copies or portions thereof, which are within, the possession, custody, or control of the state, and which:
 

 (1) are favorable to the defendant and which are material and relevant to the issue of guilt or punishment, or
 

 (2) are intended for use by the state as evidence at the trial, or
 

 (3) were obtained from or belong to the defendant.
 

 The court may determine whether evidence is subject to the provisions of Paragraph (1) hereof by in camera inspection.
 

 |7La.C.Cr.P. article 719 states that:
 

 A. Upon motion of the defendant, the court shall order the district attorney to permit or authorize the defendant to inspect and copy, photograph, or otherwise reproduce any results or reports, or copies thereof, of a physical or mental examination, and of scientific tests or
 
 *1254
 
 experiments, made in connection with or material to the particular case, that are in the possession, custody, control, or knowledge of the district attorney and intended for use at trial. Exculpatory evidence shall be produced under this Article even though it is not intended for use at trial.
 

 B. In addition, upon motion of the defendant, whenever the court orders the defendant to provide urine, blood, saliva, or hair samples or samples of other bodily substances for deoxyribonu-cleic acid testing in a criminal case, the defendant shall be authorized to acquire one-half of the deoxyribonucleic acid sample to be tested separately by the defendant at his expense.
 

 The State has a continuing duty to disclose under La.C.Cr.P. article 729.3, which states:
 

 If, subsequent to compliance with an order issued pursuant to this Chapter and prior to or during trial, a party discovers additional evidence or decides to use additional evidence and such evidence is or may be, subject to discovery or inspection under the order issued, he shall promptly notify the other party and the court of the existence of the additional evidence, so that the court may modify its previous order or allow the other party to make an appropriate motion for additional discovery or inspection.
 

 However, the State has no duty to produce records that are not in its possession or control.
 
 State v. Brown,
 
 620 So.2d 508 (La.App. 4 Cir.1993);
 
 State v. Simmons,
 
 03-20 (La.App. 5 Cir. 4/29/03), 845 So.2d 1249.
 

 In the case at bar, the State did not have possession or control over the victim’s medical records from East Jefferson Hospital. The plaintiff initially received treatment from' University Hospital and went to East Jefferson’s emergency room two days later. The record indicates that the State filed a subpoena duces tecum to obtain the victim’s medical records from University Hospital. There is nothing in the record to indicate that the State obtained the |svictim’s medical records from East Jefferson Hospital. Thus, the trial court did not err in concluding that the State did not violate its duties under the discovery articles and permitting Dr. Johnson to testify.
 

 ASSIGNMENT OF ERROR NUMBER 4
 

 In this assignment, the defendant suggests that the sentence imposed was excessive and inadequately reasoned. Because the defendant’s sentence must be vacated due to the failure of the trial court to rule on the motion for new trial prior to sentencing, this Court will defer any review of excessive sentencing until a valid sentence has been rendered by the trial court.
 
 CONCLUSION
 

 For the reasons discussed, the defendant’s conviction is affirmed. However,' the defendant’s sentence is vacated and the matter is remanded for resentencing.
 

 AFFIRMED AND REMANDED