637 So.2d 758 (1994)
STATE of Louisiana
v.
Mary RILEY.
No. 91 KA 2132R.
Court of Appeal of Louisiana, First Circuit.
Decided May 20, 1994.
*759 Clara E. Toombs, Asst. Dist. Atty., Duncan S. Kemp, III, Dist. Atty., Amite, for plaintiff-appellee.
Paul L. Billingsley, Hammond, for defendant-appellant.
Before WATKINS, SHORTESS and PARRO, JJ.
SHORTESS, Judge.
Mary Riley (defendant) was charged by grand jury indictment with second degree murder. LSA-R.S. 14:30.1. She pled not guilty and, after trial by jury, was found guilty as charged. She received the mandatory sentence of life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence.[1]
This court has addressed an out-of-time appeal by the defendant. State v. Riley, 613 So.2d 240 (La.App. 1st Cir.1992). Although this appeal assigned nine errors, sufficiency of the evidence to sustain a verdict of second degree murder was not among them, and, therefore, we did not address this issue. Our action was "CONVICTION AND SENTENCE *760 AMENDED [see footnote 1], AND AS AMENDED, AFFIRMED; REMANDED WITH ORDER."
On September 3, 1993, the Louisiana Supreme Court took the following action on the defendant's application for Writ of Certiorari:
Granted in part, denied in part.
The case is remanded to the court of appeal to address defense contentions that the evidence was insufficient to support conviction on the charged offense. See State v. Murphy, 542 So.2d 1373, 1375, n. 4 (La.1989); State v. Raymo, 419 So.2d 858, 861 (La.1982). That review should include consideration of whether the defense established by a preponderance of the evidence those mitigating factors which reduce the degree of homicide from murder to manslaughter. State ex rel. Lawrence v. Smith, 571 So.2d 133 (La.1990); State v. Lombard, 486 So.2d 106 (La.1986). Relief is denied in all other respects.
State v. Riley, 623 So.2d 1289 (La.1993).

FACTS
Pursuant to the Supreme Court's instructions, we have again reviewed this record, this time for insufficiency, and note the following facts.
There is no dispute that Lottie Baham, 64 years old and married to Hezzie G. Baham, died from multiple stab wounds inflicted upon her by defendant on June 13, 1985, with a butcher knife in the kitchen of the victim's house located on U.S. Highway 51 in Tickfaw, Louisiana.
Hezzie Baham, the victim's husband of 29 years, testified during the prosecution's case that defendant had lived on their property for four to five years in a trailer which she rented.
Rhonda Marie Newman is Gloria Foret's daughter and the victim's stepgranddaughter. She and her young daughter, Casey, also lived in a trailer on the property. She testified that defendant was a friend who lived on the property in the back; that on June 13, 1985, at approximately 5:00 p.m., she got off work, went to her trailer and ate supper; that she ate too fast and became nauseated; that she went to Foret's house to get some Pepto Bismol; that Foret's house was very close to hers and just behind her grandparents' home; that defendant was at Foret's along with Casey and a neighbor; that everyone chatted but she heard nothing about defendant and the victim because she was in the bathroom most of the time; that defendant announced she had to go home to stir her beans, but was afraid she might have locked herself out and might need some help; that she told defendant just to call and she would help; that she watched defendant walk toward the victim's house to see if she was going to get the keys from the victim and walked behind her; that the victim and defendant started talking about four to five feet from her in the doorway of the victim's house; that the victim waved at her and both told her "bye"; that she returned to her mother's to let her know that defendant did not need help; that as she started walking back to her trailer, she saw defendant coming around the side of the victim's house; that defendant put her arm behind her back and asked her to tell Foret to "come here"; that she "hollered" for one of the boys to get Foret; and that when she looked back, she saw a little blood on defendant's hand.
Gloria Foret is Newman's mother, Hezzie's daughter, and the victim's stepdaughter. Her house is located behind her parents' and off U.S. Highway 51; defendant's trailer was located behind her house. She testified that on June 13, 1985, around 5:00 p.m., she was cooking supper and her daughter and neighbor were in the kitchen with her; that defendant came in the back door; that after some "normal chitchat" defendant told them the victim wanted to evict her; that defendant said she had to go stir her beans and left; that Newman left also; that defendant returned later through the back gate; that as she went out her back door she noticed defendant had blood on her hand and leg; that defendant told her to call the police because she had stabbed Foret's mother;[2] that defendant washed her hands at an outside faucet; that defendant then came inside and asked her if she had gotten the police; that *761 defendant had no blood on her when she came into the house; that she called the police; and that she then gave the phone to defendant who talked to the police.
Deputy Kathy Gideon was the radio dispatcher for the Tangipahoa Parish Sheriff's office who took defendant's call on June 13, 1985, at 6:19 p.m.; that defendant told her she had just killed a lady named Lottie Baham with a knife; and that she did not mention any actions of the victim.
Detective Mike Sticker was a deputy sheriff who assisted in the investigation. He testified that when he and Deputy Mike Barron got to the scene, smoke was coming from the kitchen where a frying pan on the stove had overheated; that they also found a hamburger, some chopped onions, and a dish on the counter; that he found the victim's body, face down, on the floor, a large puddle of blood in front of the refrigerator and to the left of the victim's body, and a large butcher knife and a fork right next to the body; that the victim had no pulse and was dead; that as he went out the front door, defendant came around the house and said, "I am Mary Riley, I stabbed Mrs. Baham"; that he noticed no bruises or cuts on defendant's body; that he stopped her and read her Miranda rights to her; that defendant was transported to the sheriff's Hammond substation; that he re-advised her of her rights at the substation; that he filled out and defendant signed a waiver of rights document which stated she had been charged with manslaughter; that at that time the investigation was not complete; and that defendant then gave a voluntary recorded statement. The tape of that statement was played to the jury at the conclusion of Sticker's testimony.
Dr. Joseph Guileyardo, a pathologist, performed the autopsy on the victim on June 14, 1985. He testified that the cause of death was a stab wound; that there were multiple stab wounds; that the perforations resulted in severe bleeding into the chest cavity which collapsed a lung; and that there was severe bleeding into the abdominal cavity. He described four stab wounds and several smaller, superficial wounds. Two of the stabs struck the victim's front. One went three inches into her body, hitting her colon. The other, in the abdomen, did not enter the abdominal cavity but hit only tissue. The non-lethal back stab was three and one-half inches long but fell outside the rib cage and was confined to tissue. The lethal stab was four inches deep and perforated the posterior wall of the victim's back, her spleen, and her diaphragm.
The superficial lacerations were slicing-type injuries to the victim's hands. The tip of the thumb, the tip of the third finger, and the base of the thumb on the right hand, and the tip of the little finger on the left hand were cut.
Guileyardo's diagram, which was introduced into evidence, pinpoints the four stab wounds and the four superficial wounds to the victim's hands. It also indicates the victim had two contusions on the right leg, one below the knee and one on the upper thigh.
Defendant recalled Hezzie Baham and Foret in her defense, and defendant testified on her own behalf.
Hezzie Baham testified that defendant and the victim were not in a big argument that day, but were arguing over a pile of sand which the victim said defendant could not put in the pasture on the Baham's property; that he heard the victim tell defendant she was "going to get a court order" to have defendant evicted; and that the victim did not yell, curse, or get abusive, as she was a "Christian going person" who did not argue.
Gloria Foret testified that the victim was her stepmother; that she did not know the victim and defendant to fight or argue; and that defendant, rather than the victim, told her the victim was going to have defendant evicted.
Defendant was 41 years old on the date of the victim's death and had lived on the Bahams' property since January 1981, about four and one-half years. She testified on direct examination that on June 13, 1985, she and Hezzie were by her trailer when the victim came "back there just storming and accusing us that we were sneaking around behind her back"; that the victim told defendant she had to move; that Hezzie told her she did not have to move; that every three or four months the victim went on a rampage; *762 that after talking to Foret, she went to the victim's house to try to calm her down; that she told the victim she did not want to move and did not think the victim wanted her to move; that she followed the victim into the kitchen; that the victim started screaming at her again, accusing her of "sneaking around" with Hezzie; that the victim "kept hollering and finally she grabbed the knife and said she was going to put a stop to it and come at me with the knife" in her right hand; that she took the knife away from the victim by grabbing the victim's wrist with her left hand and taking the knife handle with her right hand; that the victim let go of the knife after a little struggle, but then grabbed her shirt; that the victim kept pulling her shirt and yelling; that they struggled over the knife; that when she first stabbed the victim, they were "basically in a lock"; that the second time she stabbed the victim, the victim was falling but was still pulling on defendant's shirt; that she remembered stabbing the victim after she fell to the floor; and that she did not intend to kill the victim.
Defendant completed her testimony by stating she had a criminal record; that she had killed her common law husband in 1977; that she had entered a plea bargain to manslaughter; and that she was sentenced to five years in prison.
On cross-examination, defendant admitted that in her statement given a few hours after the killing she said nothing about the victim grabbing her shirt; that she told police the victim "kept cussing me ... and by then I had lost my temper.... I guess I just kept stabbing her.... I think I stabbed her three or four times like that"; and that she never considered dropping the knife and leaving the victim's house. Defendant also could not be positive as to whether the victim tried to strike her after she had taken the knife away. Defendant also admitted that initially she did not tell the dispatcher or the investigating police officer the victim had come at her with a knife.
The supreme court has instructed us to address whether the evidence was sufficient to support a conviction of second degree murder and whether defendant established by a preponderance of the evidence those mitigating factors which reduce the degree of homicide from murder to manslaughter.

SUFFICIENCY OF THE EVIDENCE
The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude the state proved the essential elements of the crime beyond a reasonable doubt. See La.C.Cr.P. art. 821; State v. King, 563 So.2d 449, 456 (La.App. 1st Cir.), writ denied, 567 So.2d 610 (La.1990). The Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), standard of review incorporated in Louisiana Code of Criminal Procedure article 821 is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, Louisiana Revised Statute 15:438 provides that the fact finder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. State v. McLean, 525 So.2d 1251, 1255 (La.App. 1st Cir.), writ denied, 532 So.2d 130 (La.1988).
At the time of this homicide, Revised Statute 14:30.1, in pertinent part, provided:
Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm;
Specific criminal intent is that state of mind which exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act or failure to act. LSA-R.S. 14:10(1). Specific intent may be proved by direct evidence, such as statements by a defendant, or by inference from circumstantial evidence, such as a defendant's actions or facts depicting the circumstances. State v. Johnson, 461 So.2d 1273, 1277 (La.App. 1st Cir.1984). Specific intent is an ultimate legal conclusion to be resolved by the fact finder. State v. Graham, 420 So.2d 1126, 1128 (La.1982).
Revised Statute 14:31, at the time of this homicide, provided, in pertinent part:
Manslaughter is:
(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), *763 but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed;
Defendant stabbed the victim several times. Four of the wounds were deep, penetrating stabs to the front and back of the victim. Defendant testified she inflicted wounds to the victim's back as the victim was falling to the floor. The autopsy also shows there were four slicing-type wounds to the victim's hands and contusions to her leg. This attack occurred in the victim's kitchen as she was cooking a hamburger. She was 64 years old, and defendant was 23 years younger. If defendant's version is accepted, she had no problem disarming the victim and could easily have desisted and left the victim's house, but she did not do so. She told the police she started stabbing the victim because she lost her temper.
Defendant concedes the only issue is whether murder or manslaughter was committed. The jury was correctly charged. The trial became strictly a fact-finding endeavor by the jury. Did the evidence, in a Jackson v. Virginia context, viewed in a light most favorable to the State, justify a conviction of murder? We note that the jury was not unanimous, having voted 10-2 in favor of a guilty of murder verdict. We also note that the jury was the sole judge of the credibility of the witnesses. If the jury determined defendant was not credible, then the whole premise for manslaughter fell because the evidence which remained certainly could have convinced a reasonable fact finder that defendant had specific intent to kill or inflict great bodily harm.

DID DEFENDANT ESTABLISH BY A PREPONDERANCE OF EVIDENCE THE MITIGATING FACTORS WHICH REDUCE THE DEGREE OF HOMICIDE FROM MURDER TO MANSLAUGHTER?
The existence of "heat of blood" and "sudden passion" are not elements of the offense of manslaughter, but rather are factors in the nature of mitigating circumstances which may reduce the grade of homicide. State v. Tompkins, 403 So.2d 644, 648 (La.1981). Provocation is a question of fact to be determined by the trier of fact. State v. Smith, 490 So.2d 365, 370 (La.App. 1st Cir.), writ denied, 494 So.2d 324 (La.1986). Thus, the issue is whether a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that the mitigating factors were not established by a preponderance of the evidence. State v. Lombard, 486 So.2d 106, 111 (La.1986).
No evidence was presented by defendant of any mitigating circumstances other than defendant's statement to the police that she lost her temper. After disarming the victim, she could have easily left the house of this 64-year-old woman, 23 years defendant's senior, but she never considered that option; instead, she started stabbing and kept stabbing the victim who "had ahold of my shirt." No evidence substantiated that defendant's "loss of temper" equated to "heat of blood" or "sudden passion." The record's silence as to defendant's state of mind immediately before and after this event is also telling. No one described defendant as emotional. Defendant matter-of-factly described the event ("I have stabbed Mrs. Baham"), washed her hands, and talked to the police, showing no emotion at any time. These actions clearly belie the existence of "heat of blood" and "sudden passion" sufficient to deprive an average person of his self-control and cool reflection. LSA-R.S. 14:31.
Defendant had the burden of proving these mitigating factors by a preponderance of the evidence. The jury obviously found defendant not credible. No one independently corroborated defendant's version that the victim accused her of sneaking around with her husband, or her statement of a heated argument with the victim in Hezzie Baham's presence earlier that day. In fact, Hezzie contradicted defendant's version of the episode and called it "just a little argument over sand."
*764 A rational trier of fact, applying a Jackson v. Virginia standard, could have concluded that the mitigating factors which reduce the degree of homicide from murder to manslaughter were not present in this case, and defendant's conviction and sentence, as previously amended, are affirmed and remanded as per our previous order.
CONVICTION AFFIRMED. SENTENCE, AS PREVIOUSLY AMENDED, AFFIRMED; REMANDED IN ACCORD WITH PREVIOUS ORDER.
NOTES
[1] Defendant was not given credit for time served, pursuant to Louisiana Code of Criminal Procedure article 880, when the district court imposed sentence. Patent sentencing error occurs when the trial court fails to specify credit for time served. State v. Greer, 572 So.2d 1166, 1172 (La.App. 1st Cir.1990). However, in State v. Riley, 613 So.2d 240 (La.App. 1st Cir.1992), we recognized the patent sentencing error and, pursuant to Code of Criminal Procedure article 882(A), amended defendant's sentence to reflect that she was to be given credit for time served prior to the execution of her sentence.
[2] The victim is actually Foret's stepmother.