897 So.2d 57 (2004)
STATE of Louisiana
v.
Albert CORKERN.
No. 2003 KA 1393.
Court of Appeal of Louisiana, First Circuit.
September 17, 2004.
Writ Denied February 18, 2005.
*59 Hon. Scott M. Perrilloux, District Attorney, A. Bradley Berner, Morgan Griggs, Assistant District Attorneys, Amite, for State of Louisiana.
Jane L. Beebe, Gretna, for Defendant-Appellant Albert Corkern.
Before: CARTER, C.J., PETTIGREW, and McDONALD, JJ.
PETTIGREW, J.
The defendant, Albert Corkern, was charged by grand jury indictment with second degree murder, a violation of La. R.S. 14:30.1. He pled not guilty and moved to suppress his oral inculpatory statement. Following a contradictory hearing, the trial court denied the motion to suppress. The defendant was tried by a jury and convicted as charged. He was sentenced to life imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence. The defendant moved for a new trial and for post verdict judgment of acquittal. The trial court denied both motions. The defendant now appeals. Finding no merit in the assigned errors, we affirm.

FACTS
On March 30, 2001, the defendant and his wife, Elaine Corkern (the victim), were alone in their Tickfaw, Louisiana, residence. At some point during the night, the couple engaged in an argument during which the victim threatened to leave the defendant. In response, the defendant fired a single gunshot, fatally injuring the victim. The defendant was subsequently arrested and charged with second degree murder.

INSUFFICIENT EVIDENCE
In his first assignment of error, the defendant submits that the evidence presented by the State at trial was insufficient to support the second degree murder conviction. Specifically, he argues that the evidence failed to prove that he possessed the requisite specific intent to kill or inflict great bodily harm. In the alternative, the defendant argues his actions were a result of provocation and, thus, support only a conviction of manslaughter.
The standard of review for the sufficiency of evidence is whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); La.Code Crim. P. art. 821. This standard of review, in particular the *60 requirement that the evidence be viewed in the light most favorable to the prosecution, obliges the reviewing court to defer to the actual trier of fact's rational credibility calls, evidence weighing, and inference drawing. State v. Mussall, 523 So.2d 1305, 1308-1311 (La.1988). The reviewing court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. State v. Houston, 98-2658, p. 5 (La.App. 1 Cir. 9/24/99), 754 So.2d 256, 259.
Second degree murder is defined in La. R.S. 14:30.1(A)(1) as the killing of a human being "[w]hen the offender has a specific intent to kill or to inflict great bodily harm." Thus, to support a conviction for second degree murder the State is required to show: 1) the killing of a human being; and 2) that the defendant had the specific intent to kill or inflict great bodily harm. State v. Morris, 99-3075, p. 13 (La.App. 1 Cir. 11/3/00), 770 So.2d 908, 918, writ denied, XXXX-XXXX (La.10/12/01), 799 So.2d 496, cert. denied, 535 U.S. 934, 122 S.Ct. 1311, 152 L.Ed.2d 220 (2002).
Specific criminal intent is the state of mind that exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Specific intent may be proved by direct evidence, such as statements by a defendant, or by inference from circumstantial evidence, such as a defendant's actions or facts depicting the circumstances. State v. Cummings, 99-3000, p. 3 (La.App. 1 Cir. 11/3/00), 771 So.2d 874, 876. Specific intent to kill or inflict great bodily harm can be Inferred from a shooting that occurs at a fairly close range. See La. R.S. 14:30.1(A)(1); Cummings, 99-3000 at 4, 771 So.2d at 876. Moreover, it is clear that deliberately pointing and firing a deadly weapon at close range are circumstances that will support a finding of a specific intent to kill. State v. Broaden, 99-2124, p. 18 (La.2/21/01), 780 So.2d 349, 362, cert. denied, 534 U.S. 884, 122 S.Ct. 192, 151 L.Ed.2d 135 (2001); State v. Tassin, 536 So.2d 402, 411 (La.1988), cert. denied, 493 U.S. 874, 110 S.Ct. 205, 107 L.Ed.2d 159 (1989). See also State v. Dubroc, 99-730, pp. 6-7 (La.App. 3 Cir. 12/15/99), 755 So.2d 297, 303-304.
In the instant case, the jury considered the following testimony and evidence. Jennifer Corkern, the daughter-in-law of the victim and the defendant, testified that at the time of the instant offense she and her husband William Corkern (the couple's son) lived next door. On the night in question, Jennifer and William were returning home when they overheard the defendant and the victim arguing inside their residence.
According to Jennifer, the following morning, at approximately 8:30, she went next door to visit with the victim. She knocked on the door but no one answered. Jennifer placed a call to the victim's cell phone, but the victim did not answer the call. Meanwhile, as she and William remained outside doing yard work, Jennifer returned and knocked on the victim's door several times. Jennifer thought it strange that although the victim's vehicle was still parked at the residence, she did not answer the door. Jennifer testified that she did not observe anyone enter or exit the couple's residence. Later, sometime around noon, when Jennifer approached again and knocked on the couple's door, the defendant answered. He partially opened the door and told Jennifer the victim was not feeling well and was asleep.
Later on that day, when Jennifer returned to check on the victim, despite having earlier claimed that the victim was III, the defendant told Jennifer that the victim was not at home. He said she left with a *61 friend, Ruth McGary. Shortly thereafter, when William asked the defendant (his father) for assistance in unloading some appliances, the defendant exited the residence and locked the door behind him. Finding the defendant's actions bizarre, particularly in light of the argument she overheard the previous night, Jennifer grew concerned for the victim.
Jennifer testified that later on, after they observed the defendant depart from the residence, she and William approached and knocked on the couple's door again, hoping the victim would answer. Still no one answered. Once the defendant returned, Jennifer and William (determined to enter the residence to investigate) asked the defendant for permission to use his telephone.[1] The defendant hesitantly allowed them inside. Inside the apartment, Jennifer stated she observed broken beer bottles on the floor and a large stain, which appeared to be dried blood, on the floor. She also noticed that the couple's bedroom door was closed. Attempts to open the door were unsuccessful, as it was locked. Jennifer used the telephone to contact Ms. McGary to inquire about the victim's whereabouts. Ms. McGary indicated she had not seen the victim at all that day. Alarmed, Jennifer and William inquired as to whether the defendant had reported the victim's disappearance to the police. The defendant assured them he had.
Shortly thereafter, Jennifer contacted the Tangipahoa Parish Sheriff's Office. Once she confirmed that a missing person report had not been made, she told the police that she suspected that the defendant was involved in the victim's disappearance. Tangipahoa Parish Sheriff's officials arrived at the residence and found the victim's body lying on the floor in the couple's bedroom near the foot of the bed. Her body was cold and unresponsive. According to Lieutenant Rodney Varnado, the victim had no pulse and/or respirations and was obviously deceased. The defendant was found asleep on the bed with the gun next to his head.
Lieutenant David Vitter of the Tangipahoa Parish Sheriff's Office testified that when he and other Sheriff's officials entered the defendant's residence, they found the defendant asleep on the couple's bed with a gun near his head. Lt. Vitter secured the weapon and woke the defendant. The defendant was advised of his Miranda rights and taken into custody. While en route to the jail, the defendant told Lt. Vitter that he and the victim had been fighting and she threatened to leave him. He admitted that he shot the victim and stated that he wished he could take it back. According to Lt. Vitter, the defendant did not appear intoxicated. The defendant stated he understood his rights and did not, at any time, request an attorney.
Steven Raacke, a homicide investigator with the Tangipahoa Parish Coroner's Office, testified that examination of the victim's body revealed a gunshot wound to the chin, consistent with an entrance wound, and another wound behind the right ear, consistent with an exit wound. Mr. Raacke opined that the appearance of powder residue around the entrance wound suggested that "the gunshot was at a very close range" and "was probably a contact wound."
Following his arrest, the defendant gave a taped statement to the police wherein he admitted shooting the victim when she threatened to leave him. This statement was introduced into evidence *62 and played for the jury at trial. In his statement, the defendant told the investigating officers that the matter actually began the week before the victim's death when she left home and stayed away for approximately two days. The defendant claimed he did not know where the victim was. When she returned, according to the defendant, he and the victim argued for a while, but later, it was "like she never left."
According to the defendant, on Friday, March 30, 2001, at some time after 10:30 p.m., he and the victim engaged in yet another argument. During the argument, the defendant claimed, the victim threatened to leave again. At this point, the defendant "couldn't take it no [sic] more," so he shot her. He stated that he shot the victim in the living room as she ran from the front door towards the bedroom. The defendant explained that he shot the victim only once, with the .22 caliber rifle he kept near the chair where he was sitting.
The defendant further explained that after shooting the victim, he sat, staring at the victim's deceased body, "wishing things could be different." He claimed he then planned to shoot himself, but could not do it. The following day, the defendant moved the victim's body into the bedroom. He used a towel to clean up the pool of blood that had formed beneath the victim's head. When his son and daughter-in-law came to the residence looking for the victim, the defendant claimed he told them that she had gone out with a former co-worker.
As for the defendant's claim that the evidence does not prove specific intent to kill or to inflict great bodily harm, it is well settled that deliberately pointing and firing a deadly weapon at close range are circumstances that will support a finding of a specific intent to kill. Broaden, 99-2124 at 18, 780 So.2d at 362. Therefore, based upon the evidence in this case, including the defendant's own statement, the jury could easily have inferred that the defendant had either the specific intent to kill or to inflict great bodily harm upon the victim.
Having found the elements of second degree murder, the jury was then required to determine whether the circumstances indicated that the crime was actually manslaughter. In support of his contention that the evidence supported only a conviction of manslaughter, the defendant avers that the victim's threat to leave him, during an argument, was sufficient provocation to prove he acted in sudden passion or heat of blood.
Pursuant to La. R.S. 14:31(A)(1), manslaughter is defined, in pertinent part, as follows:
A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed[.]
In brief to this court, the defendant erroneously places the burden of proving the absence of sudden passion or heat of blood on the State. The existence of "sudden passion" and "heat of blood" under La. R.S. 14:31(A)(1) are not elements of the offense, but, rather, are factors in the nature of mitigating circumstances to be proven by the defendant which may reduce the grade of homicide. See State v. Crochet, 96-1666, pp. 9-10 *63 (La.App. 1 Cir. 5/9/97), 693 So.2d 1300, 1307, writ denied, 97-1547 (La.11/21/97), 703 So.2d 1305. The defendant has the burden of proving these mitigating factors by a preponderance of the evidence. State v. Riley, 91-2132, p. 11 (La.App. 1 Cir. 5/20/94), 637 So.2d 758, 763. Provocation is a question of fact to be determined by the trier of fact. Thus, the issue remaining is whether any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that the mitigating factors were not established by a preponderance of the evidence. State v. Harris, 97-0537, p. 11 (La.App. 1 Cir. 2/20/98), 708 So.2d 1169, 1176, writ denied, 98-0758 (La.9/4/98), 723 So.2d 434.
In the instant case, the unanimous guilty verdict indicates that the jury concluded this was a case of second degree murder and rejected the possibility of a manslaughter verdict. The jury obviously concluded that the verbal altercation and/or the alleged threat by the victim to leave did not equate to provocation sufficient to deprive an average person of self-control and cool reflection, and thus, the mitigating factors, which would reduce the degree of homicide from murder to manslaughter, were not present in this case. We find no error in this conclusion.
After a careful review of the entire record, viewing all of the evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have determined beyond a reasonable doubt that the defendant was guilty of second degree murder, and that no mitigating factors were established by a preponderance of the evidence. This assignment of error lacks merit.

MOTION TO SUPPRESS
In his second assignment of error, the defendant contends the trial court erred in denying his motion to suppress his oral inculpatory statement. Specifically, the defendant argues his ability to freely and voluntarily waive his rights was impaired by intoxication.
The defendant's motion to suppress and the transcript of the hearing on the motion show the defendant made no specific arguments about the voluntariness of his statement based upon intoxication. Thus, arguably, this issue has not been reserved for review on appeal. See La.Code Crim. P. art. 841. Nevertheless, because the defendant's motion to suppress challenges the voluntariness of his statement, and in the interest of justice, we will consider the argument herein.
Louisiana Code of Criminal Procedure article 703(D) provides that on the trial of a motion to suppress, the burden is on the defendant to prove the ground of his motion, except that the State shall have the burden of proving the admissibility of a purported confession or statement by the defendant. Pursuant to La. R.S. 15:451, before a purported confession can be introduced in evidence, it must be affirmatively shown to be free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises.
The admissibility of a confession is, in the first instance, a question for the trial court; its conclusions on the credibility and weight of the testimony relating to the voluntary nature of the confession are accorded great weight and will not be overturned unless they are not supported by the evidence. Whether a showing of voluntariness has been made is analyzed on a case by case basis with regard to the facts and circumstances of each case. The trial court must consider the totality of the circumstances in deciding whether a confession is admissible. State v. Guidry, 93-1091 *64 (La.App. 1 Cir. 4/8/94), 635 So.2d 731, 733-734, writ denied, 94-0960 (La.7/1/94), 639 So.2d 1163.
In State v. Guidry, in which the defendant claimed that his intoxication impaired his ability to voluntarily waive his rights, we stated:
When the free and voluntary nature of a confession is challenged on the ground the defendant was intoxicated at the time of the confession, the confession will be rendered inadmissible only if the intoxication is of such a degree as to negate the defendant's comprehension and to make him unconscious of the consequences of what he is saying. Whether or not intoxication exists and is sufficient to vitiate the voluntariness of a confession are questions of fact, and the trial court's ruling on this issue will not be disturbed unless unsupported by the evidence.
Guidry, 635 So.2d at 734 (citation omitted).
At the suppression hearing, Lt. Varnado testified that he read the defendant his Miranda rights prior to taking his tape-recorded statement. Thereafter, the defendant signed an Advice of Rights form signifying that he understood his rights as related by Lt. Varnado. Although the defendant was asleep when Lt. Varnado approached to talk to him, Lt. Varnado stated that once awake, the defendant did not exhibit any signs of intoxication. He indicated that the defendant appeared to understand his rights and that he answered questions appropriately. Both the defendant's statement and the reading of the rights form were recorded on audiotape. The defendant did not testify at the hearing on the motion to suppress. The trial court ruled that the defendant's constitutional rights were not, in any way, violated in the taking of his statement.
In reviewing the correctness of a trial court's ruling on a motion to suppress a confession, we are not limited to the evidence introduced at the hearing on the motion but may consider all pertinent evidence adduced at trial. State v. Brooks, 92-3331, p. 10 (La.1/17/95), 648 So.2d 366, 372. In the instant case, Lt. Vitter, who was responsible for transporting the defendant from his residence to the jail, testified that the defendant was not intoxicated at the time of his arrest. Lt. Vitter did not recall smelling any alcohol on the defendant's breath or on his person. Lt. Vitter testified he advised the defendant of his Miranda rights and the defendant indicated he understood those rights. The defendant spoke coherently and did not show any signs of impairment.
Considering the foregoing, we are convinced that the evidence was sufficient to sustain the State's burden of proving a knowing and intelligent waiver of the defendant's rights. Thus, the trial court did not err when it denied the motion to suppress the defendant's statement. This assignment of error is without merit.
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Because they were in the process of moving into their home next door to the victim and the defendant, Jennifer and William did not have telephone service.